278 So.2d 699

**Lisa Ann HOLCOMB, suing By and Through her father and next of kin, Victor Holcomb**

v.

**ESCAMBIA COUNTY HOSPITAL BOARD, a Public County Hospital Corp.**

**SC 130.**

Supreme Court of Alabama.

April 12, 1973.

Kenneth Cooper, Bay Minette, for appellant.

Thomas E. Twitty, Mobile, Broox G. Garrett, Brewton, for appellee.

On Rehearing

HARWOOD, Justice.

Upon original deliverance a majority of the justices of this Court concluded that the judgment entered in this cause should be reversed and remanded. An application for rehearing was duly filed. Upon further consideration and in the light of the application for rehearing, a majority of the justices have now concluded that the application for rehearing should be granted and the judgment of the court below affirmed.

The result of such action is stated by the Supreme Court of Mississippi in White v. State, 190 Miss. 589, 195 So. 479, to be:

"It was true at common law, and the principle is now sustained by the weight of authority, that an order granting a rehearing in a proper case operates to reverse or vacate and set aside the original decision of the appellate court."

In Bally v. Guilford Township School Corporation, 234 Ind. 273, 126 N.E.2d 13, it is stated:

"Granting a rehearing recalls the former opinion of this court. Ewbank's Manual of Practice (2nd Ed.) § 246, p. 476."

To like effect see Atlantic Greyhound Corp. v. Public Service Commission et al., 132 W.Va. 650, 54 S.E.2d 169.

Statements in accord with principles above enunciated may also be found in 5 C.J.S. Appeal and Error, § 1446 and 5 Am.Jur.2d., Appeal and Error, Sec. 984.

In Stoke v. Converse, 153 Iowa 274, 133 N.W. 709, the court observed:

"Had the opinion in 8 Iowa, 368, been withdrawn, it likely would not have appeared in the official reports, for the granting of a rehearing has the effect to withdraw the opinion previously filed."

The basis upon which a majority of the justices have concluded that the application for rehearing should be granted is that at the original conference of the court when this case was presented the matter of the sufficiency of the assignments of error was not considered.

The appellant has made three assignments of error which read:

"No. 1. If the cause of action, as stated in the declaration arises from a breach of promise, the action is ex contractu.

"No. 2. When a complaint shows that a breach of contract is also a negligent failure to perform a duty which the law imposes by reasons of such contract, the injured party may sue for breach of contract when he is a party to it.

"No. 3. Where a breach of contract lies in the failure to perform as agreed upon, or in an omission or failure to enter into the duty to perform, however negligent such failure or omission might be, an action in assumpsit for breach of a contract will arise."

Each of the above assignments constitutes nothing more than statements of general principles of law. No ruling of the trial court is mentioned. In assigning errors, an appellant must specify the action of the trial court which he would have reviewed and revised; and only adverse rulings of the trial court are subject to assignment as error and reviewable. The office of an assignment of error is not to set forth general legal principles or contentions, but solely to inform the court that an appellant assigns as erroneous a certain specified ruling.

The above principles are set forth in a myriad of our cases, and we see no need to again cite individual cases in support of the above statements. These cases may be found in Alabama Digest, Vol. 2A, Appeal and Error, ☞Nos. 718 and 719(1).

By no construction, however liberal, can the purported assignments of error be considered as sufficient to invite a review of this judgment. The application for rehearing is therefore due to be granted, the original opinion and judgment of this court should be set aside, and the judgment appealed from is due to be affirmed. It is so ordered.

Application for rehearing granted.

Original opinion and judgment set aside.

Affirmed.

MERRILL, BLOODWORTH, MADDOX, and McCALL, JJ., concur.

HEFLIN, C. J., and COLEMAN, J., concur specially.

FAULKNER and JONES, JJ., dissent.

HEFLIN, Chief Justice (concurring):

This case has been decided on a "technicality" rather than its merits, and for the reasons stated in my special concurring opinion in *Midstate Homes v. Roberts*, 288 Ala. 86, 257 So.2d 333 (1972), I concur in the majority opinion.

COLEMAN, Justice (concurring specially):

I agree that the assignments of error are insufficient to present any question for review by this court, that the rehearing be granted, and that the judgment appealed from be affirmed.

FAULKNER and JONES, Justices (dissenting).

## I.

### Sufficiency of Assignments of Error

In registering our dissent to the majority opinion—granting appellee's Application for Rehearing on the "insufficiency" of appellant's assignments of error—we wish to make it clear that it is not our purpose to either disagree with Supreme Court Rule 1, or ignore its application. The spirit of this rule—requiring appellant to specify error so as not to put the appellate court in search of error—is essential to good order and its enforcement mandates dismissal of the appeal where the spirit of the rule is violated.

This dissent is based on our conviction that the spirit of this rule has not been violated in the instant case. The appeal is from a judgment of nonsuit superinduced by the adverse ruling of the trial court in sustaining defendant's demurrer to the plaintiff's complaint. There is but a single ruling of the court below contained in the record and the office of a motion for voluntary nonsuit in such cases is for the limited and exclusive purpose of reviewing such ruling, and on appeal only such ruling is reviewable. Roan v. Associates Discount Corp., 281 Ala. 100, 199 So.2d 643; Esslinger v. Spragins, 236 Ala. 508, 183 So. 401.

As early as 1881, this Court, as then constituted, in Robinson v. Murphy, 69 Ala. 543, had the wisdom to recognize:

". . . when the decree . . . is assailed as erroneous in the whole, an assignment of error, in the general terms of this assignment, must be accepted as conforming to the rules of practice."

Later it was observed that this exception had been applied only in equity cases:

"As early as Brahan v. Collins, Minor, 169, this court declined to accept, as the requisite specification of error, a general undesignating assertion of error by an appellant. The only relaxation the practice has had is in equity cases, where the error relied on affected the whole decree. Robinson v. Murphy, 69 Ala. 543, 546." Kinnon, as Adm'r. v. L. & N. R. R. Co., 187 Ala. 480, 482, 65 So. 397.

Rule 1 is equally applicable to appeals at law and in equity; and, as the case at

hand so forcibly demonstrates, where there is a general assignment of error—which goes to the entire order of the trial court —no search of the record is required to discern the error complained of. In the usual case, absent specific assignments of error there is no "pleading" by which the appellate court's ruling is invoked. That an exception exists (where a review of a single error going to the whole of the lower court's order is the avowed purpose of the appeal) is the common sense holding of *Robinson*.

The simple truth is (and we should bow our shameful heads in acknowledged blasphemy), except for the point being raised in appellee's brief,[1] the author of the original majority opinion would not have engaged in the futile exercise of "searching" the record for the assignments of error; and, this for the reason that the error complained of in an appeal from a judgment of nonsuit is more apparent from the record than are the assignments of error —the basis of the *Robinson* exception. It is ironic, indeed, that the majority of the Court *was* put in search of the record to discover the "insufficiency" of the assignments of error, when the author of the original opinion *was not* put in search of the record to discover the error complained of. We further note that the majority opinion in setting forth the assignments of error omits the lead sentence, which reads as follows:

"Comes now Lisa Ann Holcomb, suing by and through her father and next of friend, Victor Holcomb, Appellant in the above-styled cause, and says that there is manifest error in this cause and separately and severally assigns each of the following errors:"

It is our opinion that the words "there is manifest error in this cause", coupled with the fact that this is an appeal from a judg-

ment of nonsuit, conform to the exception recognized by this Court in *Robinson*.

The appellee's argument, in support of its contention that a failure to dismiss the appeal for appellant's violation of Rule 1 would deny to appellee "equal protection of the laws", induces us to observe that perhaps some good may come from the granting of the Application for Rehearing. A public entity who enjoys sovereign immunity from tort actions, and who defended the instant appeal on its merits on that ground, is at least *talking* about "equal protection of the laws".

II.

Merits

Since the granting of the Application for Rehearing is grounded by the majority opinion on the limited issue of the sufficiency of assignments of error, and having registered our dissent on this point, we now adopt and herewith set forth the original opinion which was authored by Associate Justice Jones and concurred in by the Chief Justice and Associate Justices Coleman, Harwood and Faulkner.

This is an appeal from a judgment of the Circuit Court of Escambia County which sustained defendant's demurrer to the complaint and ordered an involuntary non-suit with leave to appeal.

The material allegations of the two counts of the complaint are as follows:

"COUNT ONE. Plaintiff claims of the defendant, Escambia County Hospital Board, a Public County Hospital Corporation, organized pursuant to Alabama Code, Title 22, Section 204(17) et seq., the sum of Fifty Thousand and no/100 ($50,000.00) Dollars for that heretofore on, to-wit: August 23, 1970, the said defendant was engaged in the operation of a hospital at Brewton, Alabama . . .

---

1. No Motion to Dismiss the appeal for failure to comply with Rule 1 was filed, and the requirements of the rule are not

jurisdictional. Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653.

that such facilities offered included rooms for children patients, and said defendant in the regular course of the operation of said hospital hired, paid and maintained a regular staff of technicians and nurses to care for and administer to said children; and on the twenty-third day of August, 1970, when the plaintiff Lisa Ann Holcomb was admitted to said hospital, the said plaintiff . . . entered into an implied contract with the defendant wherein and whereby, for valuable consideration, defendant impliedly contracted, undertook, promised and agreed to nurse and care for the plaintiff . . . for the duration of her confinement and to furnish to said plaintiff all special facilities and nursing services . . . that on August 25, 1970, pursuant to said contract, the plaintiff . . . entered the said hospital . . . after having agreed to pay all reasonable compensation and charges and subsequently paying all such charges . . . but that said defendant did not perform or fulfill its contract to properly nurse and care for the said plaintiff and to assist in her cure of respiratory infection, or to give the plaintiff the needed medicines; but on the contrary, the defendant . . . in violation of its contract erroneously administered to the plaintiff 1 gr. codeine, 25 mg. thorazine and 5 mg. comperzine, causing the plaintiff great suffering and near death, the said drugs not having been prescribed for plaintiff . . . said action being violation of the above said contract between plaintiff and the defendant because defendant failed to care for plaintiff as contracted for, all in violation of the terms of the implied contract and as a proximate consequence of the defendant's breach of said contract the plaintiff was made sick . . . and plaintiff suffered all such injuries as a proximate consequence of the breach of the said implied contract."

Count Two makes the same allegations as to the existence of the contract, and then charges:

". . . defendant, after having accepted said contract . . . did not fulfill or perform its contract to nurse and care for said plaintiff as impliedly agreed, or to give the plaintiff the services agreed to, but on the contrary, in violation of the terms of said contract, the defendant failed to give plaintiff assistance, supervision and attention, and failed to give plaintiff the medicines prescribed by her attending physician, all in violation of the terms of the implied contract, and as a proximate consequence of defendant's breach of said contract, the plaintiff was given 1 gr. codeine, 25 mg. thorazine and 5 mg. comperzine, causing plaintiff . . . [personal injuries] as a proximate consequence of the breach of the said implied contract." (Brackets supplied.)

This is another "County Hospital" case. These cases, claiming damages (personal injury) for breach of contract in order to circumvent the sovereign immunity doctrine,[1] had their inception in Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817.

By skillfully tracking the *Paul* complaint, plaintiff here seeks to invoke the influence of *Paul,* and thereby (1) avoid the tort immunity defense; and (2) escape the holding of Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328, to the effect that an action in assumpsit will not lie where the allegations predicate a breach on wrongful or negligent performance in the absence of an express contract.

Any dissimilarity in the averments of the complaint in *Smith* and those in the case at

---

1. Jenkins v. Houston County Hospital Board, 284 Ala. 180, 223 So.2d 583; Garrett v. Escambia County Hospital Board, 266 Ala. 201, 94 So.2d 762. We note that we are not invited by this appeal to revisit *Jenkins* and *Garrett*, since our review is confined to the contract counts.

bar is a distinction without a difference. In *Smith* the plaintiff alleged that the defendant's breach consisted of administering a shot of medication in the nerve of his arm (as opposed to the blood vessel); while here the plaintiff alleges that the defendant's breach consists of administering a medication different from that prescribed by her doctor. This similarity necessarily dictates one of two conclusions: (1) On the precedent of *Smith*, we must affirm the trial court's ruling sustaining the demurrer to plaintiff's complaint, or (2) Smith v. Houston County Hospital Board, supra, must be expressly overruled.

The answer is not simple. The complexity of the problem is clearly focused by the recent memorandum opinion of U. S. District Judge Sam Pointer,[2] interpreting Alabama law in a similarly plead factual situation (the wrongful death aspect therein not here material), which holding is accurately summarized in the editor's syllabus as follows:

".   .   . where allegations of complaint reflected that County Hospital undertook performance of its obligations under alleged [implied] contract and that hospital's .   .   . [breach] was in its negligent or incomplete performance, under Alabama law, .   .   . [plaintiff] could not maintain action [in contract] against hospital." (Brackets supplied.)

If this interpretation of the status of our law is correct, and we confess that *Smith* so holds, our case law has evolved the following propositions:

1. An action for damages growing out of a contract implied by the nature of the relationship of parties (in this case, the hospital-patient relationship) can be enforced in an action ex contractu only where there is a total failure to enter upon the performance of a contract.

2. Where the defendant undertakes to perform an implied contract and defaults after partial performance, or breaches its terms by wrongful or negligent performance, an action in contract will not lie. Stated another way, in the absence of an express contract between the parties, once the defendant has commenced to perform the contract, or entered upon its performance, the contract gives way to the duty imposed by law in such cases, and the only remedy available to the plaintiff for the breach of such public duty is in tort.

Some examples may serve to clarify:

A. P-Shipper delivers his tomato crop to D-Carrier for transport to market. D leaves tomatoes in warehouse and does not undertake to load and ship as agreed, and tomatoes rot. Action in assumpsit will lie.

B. D loads tomatoes on boxcar and starts to market but boxcar is sidetracked at a point short of designated market and tomatoes rot. In the absence of an express agreement not to sidetrack, an action ex delicto only will lie.

C. D loads tomatoes on boxcar and starts to market and engineer runs at excessive speed and overturns boxcar and tomatoes rot. In the absence of express agreement to use due care in transporting crop to market, an action ex delicto only will lie.

From the foregoing analysis we must perforce conclude that we have either (1) created an exception heretofore unknown to the law of contracts to the effect that the criteria for determining a breach of an implied contract are different from that criteria applicable to an express contract; or (2) we have given the field of operation of contract law a limited application in the hospital-patient relationship cases.

The former suggests what we believe is an unwarranted distinction between implied

2. Knight v. Collins, D.C., 327 F.Supp. 97. Under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the Federal Court is required to apply the law of the forum.

and express contracts. Traditionally, the distinction between the two types of contracts has been confined to the query: "What is the contract?", but this distinction does not extend to different criteria for determining the breach. The latter conclusion is wholly untenable since the law of contracts cannot be so narrowly restricted so as to apply in one way to one relationship (for example, shipper-carrier), and in another way to another relationship (for example, hospital-patient).

An analysis of the cases that brought us to this point is in order. Since the holding in *Paul* is expressly anchored in Vines v. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436, we take *Vines* as our point of beginning.

*Vines* contained two counts. In the words of the opinion:

"The allegation in Count A that defendant breached the contract by doing the act alleged to be a breach, is in substance that it was voluntarily done. So we have in that count an allegation of the existence of a contract and its voluntary breach to the damage of plaintiff— a count in assumpsit.

"Count B makes the same allegations as to the existence of the contract, but charges that defendant negligently breached said contract. The gravamen of that count is not a charge of negligence but the breach of the contract. The fact that it was negligently breached does not affect the nature of the cause of action."

It is important to note that the opinion in *Vines,* which concluded that ". . . both counts are in assumpsit," contains a careful and rather exhaustive analysis of two distinct, but closely related, legal principles applicable in these cases: First, the election of remedies doctrine; and second, the test for determining whether the complaint sounds in contract or tort.

As to the first, *Vines* may be summarized as follows:

1. Where the duty is imposed by law, in the absence of a contract, express or implied, the redress for the violation of such public duty must lie in tort.

2. Where the duty arises out of contract, express or implied (arising by operation of law), in the absence of a publicly imposed duty, the redress for the breach of such duty must lie in contract.

3. Where the duty arises by contract, express or implied, and the law imposes a public duty as well, the redress for the breach for such duty will lie either in contract or tort.

The second *Vines'* principle provides the legal criterion to determine the gravamen of the complaint; i. e., what is charged? *Vines,* relying on well-established precedents, therein cited, answered this query by saying:

"It will be observed that a negligent *failure* to perform a contract express or implied (as alleged in count B) is but a breach of the contract. But if in performing it, it is alleged that defendant negligently caused personal injury or property damage to plaintiff, the remedy is in tort, for it is not the breach of a contract express or implied, but the breach of an implied duty to exercise due care not to injure plaintiff or her property which is the gravamen of the action."

". . . A breach of the contract is in the failure to act . . ."

We direct particular attention to the fact that the phrases "failure to perform" and "failure to act" are invariably used in *Vines* in the context of the second proposition—the pleading test—and never in the context of the first proposition—the substantive right of election between actions in contract and actions in tort. In other words, the application of the pleading test presupposes the existence of the election of remedies and looks to the language of the pleading constituting the alleged violation of duty to see if the resulting injury is

claimed to be due to defendant's "failure to perform" or "failure to act," in which case the complaint states a cause of action in contract; or, on the other hand, if the resulting injury is alleged to be due to the negligent or wrongful conduct of the plaintiff (note here the absence of any allegation of "breach" or "failure to perform"), then the cause of action, as stated in the complaint, is in tort. The determination that the cause of action, as stated by the pleading, is in contract or in tort, is not a determination that the alternative remedy could not have been elected and pleaded.

In light of the foregoing interpretation, there is nothing in *Vines* to suggest that the breach of contract remedy is limited to a total failure to enter upon the performance of the contract. These phrases— "failure to perform," and "failure to act" —are words of legal art which characterize the gravamen of the action as ex contractu in form and are not words of limitation which restrict the substantive election of remedies. Stated another way, these words constitute language of pleading used to express a breach of promise—words which are equivalent to charging that the defendant "failed to comply with the terms of the contract (either by omitting to perform or by performing in a different or negligent way)." These are not words which denote or characterize the omission of the defendant to enter upon the performance of the contractual duty. Indeed, a contrary construction would be in direct defiance of the court's holding in *Vines* that each count stated a cause of action in contract.

Next came Garig v. East End Memorial Hospital, 279 Ala. 118, 182 So.2d 852,[3] whose complaint was obviously drawn in an effort to come within the influence of *Vines*. A substantial difference, however, between the pleadings in the two cases is readily apparent. In *Vines* the complaint averred in detail the terms of the implied contract, while in *Garig* the contract is averred in general language that "the plaintiff contracted with the defendant for general hospital care and treatment."

The issue in *Garig,* as stated in the opinion:

"... must therefore be determined upon whether the action be deemed to sound in case (tort), with a statute of limitations of one year, or in contract, with a statute of limitations of six years."

After a careful analysis of *Vines,* and the earlier Alabama cases relied upon and cited by *Vines,* the *Garig* opinion concluded:

"The alleged contractual obligation in each count is 'to furnish to plaintiff general hospital care and treatment.' There is no averment of any specific terms in the contract requiring the exercise of reasonable care in performing the contract. In the absence of express terms to this effect in the contract, such terms will not be implied. Waters v. American Casualty Co. ... [261 Ala. 252, 73 So.2d 524.]" 279 Ala. at 121, 182 So.2d at 855.

In summary *Garig* is entirely consistent with the holding and the ratio decidendi of *Vines* both as to the pleading tests and the substantive right of election of remedies— the one difference being that the pleading test in *Vines* applied to the alleged breach, while the pleading test in *Garig* applied to the alleged contractual obligation.

The averment in *Garig* that the defendant contracted "to furnish to plaintiff general hospital care and treatment" is equivalent to charging that the defendant contracted not to be negligent—a publicly imposed duty arising by operation of law— the breach of which, in the absence of ex-

---

3. The defendant in this case was a private hospital and the motivation for pleading contract was not sovereign immunity but an effort to avoid the one year tort statute of limitation just as in *Vines*.

press contract to exercise reasonable care in performing such publicly imposed duty, will support an action in tort only.

*Garig* holds quite simply that where a party seeks redress in contract, express or implied, specific terms of the contract out of which the duty is alleged to arise must be averred, and a general averment that the defendant impliedly contracted to exercise due care will be construed as stating a cause of action ex delicto. It is important to note that *Garig* did not hold that plaintiff's remedy was exclusively in tort, only that the complaint did not state a cause of action in contract.[4]

Then came *Paul* which not only provided the genesis for aborting the sovereign immunity defense, but also reaffirmed *Vines*. The difference in the two cases, as disclosed by the pleadings, is merely one of scope. *Vines* contains the factual averment that the terms of the contract were breached by a failure in its performance (Count A) and by the negligent performance of the contract (Count B), while *Paul* alleged a failure to perform by failing to provide the services impliedly contracted for.

This subtle distinction between *Vines* and *Paul* became the unwitting trap that awaited *Smith*. In *Paul,* the defendant did nothing toward providing the services impliedly agreed upon by the nature of the relationship of the parties and allowed the plaintiff to have her baby in the hallway of the hospital unattended. In *Smith,* the defendant set about providing the services, or entered upon the performance of the contract, but in its performance wrongfully injected a shot of medication into the nerve of the plaintiff's arm and thereby caused paralysis. Smith construed the limited context within which *Paul* arose as establishing the legal bounds of its field of operation. This limitation results from an interpretation of the following sentence in *Paul*:

". . . Had the defendant in this case undertaken to perform the contract by administering to the plaintiff in the delivery of her child and performed its duty in a negligent manner, thereby causing the plaintiff injury, then the plaintiff's cause of action based upon such negligence would have been barred under the doctrine of governmental immunity."

When this sentence is taken in context, the key words ". . . the plaintiff's cause of action based on such negligence . . ." are not words of limitation which confine the plaintiff's remedy to an action in tort, but says that if the plaintiff had elected to sue in tort "based upon such negligence", the action would have been barred. The difficulty with the *Smith* construction of *Paul* lies in the fact that not even the dissenting opinion in *Vines* (the sire of *Paul*) takes this view. Mr. Justice Lawson makes clear in his dissent that he takes issue with the majority only in the application of the pleading test as it relates to Count B, not on the substantive issue of election of remedies.

*Smith* holds forthrightly that where the facts, as disclosed by the pleadings, show that the defendant entered upon the performance of an implied contract (even though the pleading tests of *Vines* and *Garig* are met), and the contractual obligation is breached while in performance, or wrongfully or negligently breached, then the plaintiff's substantive right of election of remedies ceases, and redress for the violation or breach of such duty lies in tort only.

Applying the foregoing analysis to the case at bar the Court must either affirm on the authority of *Smith* and expressly overrule *Vines* and the long-standing, well established precedents there relied upon, or the Court must reverse on the authority of

---

4. As to the element of proof of an implied contract in such cases, see Hall v. City of Huntsville. Alabama, et al., 1973, 291 Ala. 124, 278 So.2d 708.

**124**

*Vines* and overrule *Smith,* thereby reaffirming *Paul.*

The choice is clear. Smith v. Houston County Hospital Board, supra, should be overruled.