300 So.2d 823

**Glenda Sue HEMBREE**

v.

**HOSPITAL BOARD OF MORGAN COUNTY et al.**

**SC 766.**

Supreme Court of Alabama.

Sept. 19, 1974.

Hare, Wynn, Newell & Newton and James J. Thompson, Jr., Birmingham, for appellant.

Calvin & Gilchrist, Decatur, for appellees.

PER CURIAM.

The appellant filed suit against the Hospital Board of Morgan County for injuries received by her while at the hospital which was owned and operated by Morgan County. The defendant-appellee moved for summary judgment, which was granted, and plaintiff appealed.

The only count argued in brief by appellant is a count charging breach of an implied contract.

This case presents the same question presented in Holcomb v. Escambia County Hospital Board, 291 Ala. 114, 278 So.2d 699, but that case went off on the inade-

quacy of the assignments of error. The same question was presented in Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328. In that case, it was held that the duty of the hospital did not arise "in the terms of the contract, but because the law imposes the duty not to wrongfully injure the plaintiff in doing the act. When that duty is breached, *an action in tort only is available,* because no express or implied contract is breached." (Emphasis supplied.) The holding in *Smith* was supported by Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524, and Garig v. East End Memorial Hospital, 279 Ala. 118, 182 So.2d 852.

The action being in tort and not in contract, the defense of governmental immunity was a bar to recovery.

Appellant, in the instant case, argues in brief that if this court should "base its decision on *Smith,* appellant has no cause of action." We were asked to overrule *Smith.* We affirm the holding in *Smith.* The minority would overrule *Smith.* The trial court followed *Smith* and it results that the judgment of the trial court should be, and is

Affirmed.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX and Mc-CALL, JJ., concur.

HEFLIN, C. J., and FAULKNER and JONES, JJ., dissent.

PER CURIAM.

This case was considered by the entire court in general consultation on Monday, September 9, 1974, and a vote was taken. The vote required the writing of an opinion to conform to the views of the majority. On September 12, appellant filed a motion to dismiss the appeal. This motion was denied because a motion to dismiss *after* the court has decided a case comes too late. The fact that appellant desired to dismiss the appeal accounts for the writing of this short opinion.

All the Justices concur except JONES, J., who dissents.

JONES, Justice (dissenting).

I respectfully dissent.

The facts: Mrs. Hembree entered the Morgan County Hospital as a paying patient for the purpose of giving birth to a child. There, her seven-month old child was stillborn. After she had recovered from the effects of the anesthetic, she and her husband, along with their minister, made preliminary plans for a Christian burial of the stillborn child. Later, an employee of the hospital approached the Hembrees and asked them to sign a "consent form" which would allow the hospital to dispose of the remains of their stillborn child. They refused to grant such consent but were informed the next morning that the child had been disposed of in the hospital incinerator prior to the request to give their consent for such disposition.

The breach of the contract count alleges in substance that an implied contractual obligation arose out of the hospital-patient relationship of the parties to the effect that the hospital, upon delivery of her stillborn child, would not unlawfully or wrongfully dispose of the remains of her stillborn infant without permission from the infant's parents; that the hospital breached this implied contract by failing to provide the care and attention "as per the terms of the contract in that [the hospital] caused or allowed the body of said baby to be placed in an incinerator without permission from the infant's parents, thus denying a Christian burial for the said infant, and as a result thereof, plaintiff has suffered grave and irrevocable anxiety and remorse; she suffered heartache and mental

anguish and will be caused to suffer same in the future; all to her detriment for which claims."

Thus, we again have before us a "county hospital" case wherein the plaintiff, in order to circumvent the sovereign immunity doctrine, is claiming damages for personal injury resulting from a breach of contract, which circumvention had its inception in Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969).

The identical issue as to such liability was previously before this Court in the case of Holcomb v. Escambia County Hospital Board, 291 Ala. 114, 278 So.2d 699 (1973), wherein on original deliverance a 5 to 4 majority of this Court reversed the lower Court and overruled Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328 (1971), by concluding that a personal injury claim for damages would lie for breach of contract irrespective of whether the alleged breach was based on nonperformance or wrongful or negligent performance. An application for rehearing was subsequently granted, however, affirming the lower Court's decision due to an insufficiency of the assignments of error.

The assignments of error presently before us are proper and adequate to invoke our review. The same basic issue in *Holcomb* [1] is again before us: Will an action in contract lie where the allegations predicate a breach on wrongful or negligent performance in the absence of an express contract? I would reaffirm our original holding on the merits in *Holcomb* and hold that the trial Court erred in granting the Motion for Summary Judgment.[2]

For the purpose of clarity, it should be noted that the Hospital Board (appellee) makes no contention that the plaintiff-mother is an improper party to maintain the suit; nor is it contended that the Hospital, apart from its claim of governmental immunity, owes no duty generally in the premises. The only ground, here applicable, contained in the Motion for Summary Judgment is:

"3. Defendant by virtue of governmental immunity afforded a public hospital is not liable in implied contract where the breach is not in a failure to perform the implied promise but is in the performance of the implied promise in a negligent, improper or wrongful manner."

The Hospital Board's forthright position is made abundantly clear by the following statement from its brief:

"[A] reading of Paul v. Escambia County Hospital Board shows that there was no mention [in the pleading] of a failure to use reasonable care but that the breach was simply in the failure to care for the plaintiff and furnish facilities (which was a breach of the implied contract) and this case recognizes at page 821, 218 So.2d that if the hospital had undertaken to perform the contract and done so in a negligent manner then the cause of action against the hospital would not have been in implied contract but would have been in tort and barred by governmental immunity."

The foregoing analysis of *Paul* evinces the precise error made in Smith v. Houston County Hospital Board, supra; and, thus the reasons given in *Holcomb* for overruling *Smith* are again reviewed. As we stated in *Holcomb*, any such analysis must begin with Vines v. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436

1. All references to *Holcomb* are to the original opinion found in the dissenting opinion under II, *Merits*, beginning at 291 Ala. 118, 278 So.2d 699.

2. For reasons not disclosed in the majority opinion, two members of the Court comprising the majority in the original opinion in *Holcomb*—overruling *Smith*—now concur in the majority opinion in this case—reaffirming *Smith*.

(1955), the progenitor of *Paul*. The plaintiff in *Vines* was injured as a result of the defendant's bus, a public carrier, stopping at an unsafe point beyond the customary stopping place. Count A alleged that the defendant breached the implied contract to safely transport the plaintiff to the customary stopping place by doing the act alleged to be the breach, i. e., by going beyond the customary stopping place to a point of danger. Count B tracked the contract averments of Count A but alleged a negligent breach. Both counts were held "in assumpsit."

While both counts in *Vines* allege a *failure* to perform the terms of the implied contract, neither grounds such failure on nonperformance—one count alleging a voluntary breach and one count alleging a negligent breach. In other words, neither count, after setting up the carrier-passenger relationship out of which the implied contract of safe carriage arose, predicates the alleged breach on the fact that defendant did nothing or did not set upon the performance of its contractual obligation. The counts do not allege that, upon plaintiff's entering the bus and paying her fare, the defendant breached the contract through its failure to perform its obligation by not moving the bus; but, rather, both counts allege a failure in the performance by the doing of something other than, or different from, the thing promised.

*Paul*, after settling the governmental immunity issue, takes its cue from *Vines* and recognizes that an implied contract arose out of the hospital-patient relationship to the effect that the hospital agreed that it was adequately equipped to care for a patient whom it admitted with known maternity problems. *Paul* arose in the context of *negative* allegations of breach, i. e., that the hospital-defendant *failed* to furnish the facilities for the proper care and treatment of plaintiff. There is no allegation that the defendant set upon its performance of the contract; but, rather, the allegations are to the effect that the defendant did nothing—did not have the facilities impliedly promised, and allowed the plaintiff to have her baby unattended in the hallway of the hospital.

Appellee's analysis of *Paul,* as set forth in its brief, is as follows:

" . . . this case recognizes at page 821, 218 So.2d [283 Ala. at p. 493] that if the hospital had undertaken to perform the contract and done so in a negligent manner then the cause of action against the hospital would not have been in implied contract but would have been in tort and barred by governmental immunity."

Admittedly, appellee's interpretation of *Paul* (which, as we shall later see, is erroneous) became the holding in Smith v. Houston County Hospital Board, supra, and appellant admits that if *Smith* is reaffirmed, she is not entitled to prevail on this appeal.

A literal reading of the misinterpreted sentence in *Paul* (page 493 of 283 Ala., page 821 of 218 So.2d), in its full context, is the key to its proper understanding and analysis:

"Had the defendant in this case undertaken to perform the contract by administering to the plaintiff in the delivery of her child and performed its duty in a negligent manner, thereby causing the plaintiff injury, then the plaintiff's cause of action *based upon such negligence* would have been barred under the doctrine of governmental immunity." [Emphasis supplied.]

This language is offered by the opinion as a very simple explanation of plaintiff's motive in electing contract rather than tort as her remedy. It says in effect that, if the plaintiff had elected to sue ex delicto for the negligence of the hospital in the performance of its duty to care for the plaintiff, such action would have been barred by the defense of governmental immunity. This is but a part of a connecting paragraph between the Court's discussion

of the governmental immunity doctrine and the election of remedies doctrine.

Any other interpretation of this sentence puts *Paul* squarely over against *Vines*, and it is inconceivable that *Paul* was intended to overrule, or even modify or restrict *Vines*, in light of *Paul's* total reliance upon *Vines*. Mr. Justice Simpson, who authored both opinions, stated in *Paul*:

"Although the cases citing Vines may be few, it has not been overruled, and we reaffirm its holding."

Just as it can be said that *Vines*, in the context of an active breach—negligent or wrongful performance—is not to the exclusion of a breach of contract by nonperformance, it can equally be said that *Paul*, in the context of a passive breach—nonperformance—is not to the exclusion of a breach by negligent or wrongful performance. It is the fallacy of *Smith* that it interpreted the "nonperformance" context of *Paul* as establishing the legal bounds of its field of operation. As we have already observed, this view necessarily concludes that *Paul* overruled *Vines*, which—like *Smith*—admittedly is an *active* rather than a *passive* breach case.

This Court in *Smith*, misapplying *Paul*, held that defendant's undertaking to perform the contract (the wrongful or negligent injection of medication into the nerve rather than the bloodvessel of plaintiff's arm) did not constitute a *failure* to perform, and thus plaintiff's remedy was exclusively in tort. But, as we have seen from our analysis of *Vines*, the "failure to perform the terms of the contract" requirement need not be restricted to a *passive* breach, i. e., nonperformance as opposed to wrongful or negligent performance. Otherwise stated, where the relationship of the parties gives rise to a contractual duty; where the gravamen of plaintiff's claim ·for breach of such duty is ex contractu; and where plaintiff sustains the burden of proof by showing that the defendant failed to perform the terms of the agreement, express or implied, the plaintiff is entitled to recover legal damages resulting from such breach without respect to the *modus* of the breach.

When the above test is applied to the factual context of the instant case, it is clear that our inquiry in determining plaintiff's right to maintain a contract action is not whether the defendant allegedly breached its contractual obligation by the doing of *nothing* as opposed to the doing of *something*; our inquiry, instead, is whether a contractual obligation arose out of the hospital-patient relationship of the parties whereby the Hospital impliedly promised that it would not wrongfully dispose of plaintiff's stillborn fetal child without her consent, and whether the Hospital breached such promise by violating its terms to the injury of the plaintiff.

Our research, including the excellent brief of appellee, discloses no authority for the proposition that "failure to perform the terms of the contract" is the legal equivalent of inaction, or the absence of any undertaking pursuant to the contractual duty thereby imposed. Basic common law principles of contract equate "failure to perform" with noncompliance with the terms of the contract, and the manner of the breach—whether by doing nothing or by doing something different from that which was promised—is not the test of the gravamen of the action. *Vines*, supra.

Indeed, the facts here before us clearly demonstrate the fallacy of the nonfeasance versus malfeasance thesis of *Smith*. The very essence of the agreement implied in the hospital-patient relationship between Mrs. Hembree and the Hospital Board is couched in the negative, i. e., that the hospital would *not* dispose of the remains of the deceased child without the mother's consent. The breach necessarily, then, consists in the *doing* of that which it had promised *not* to do—the wrongful disposition of the stillborn fetus without parental

consent. The fact that this *modus* of the breach was through the commission of a wrongful or negligent act, and therefore tortious as violative of a publicly imposed duty,[3] serves only to afford the plaintiff her election of remedies and not to restrict her right of recovery to an action ex delicto. A contrary holding—which is the conclusion reached in *Smith* and reaffirmed by the majority—is the antithesis of *Vines* I would overrule *Smith* and reverse and remand on the authority of *Vines* and *Paul.*

HEFLIN, C. J., and FAULKNER, J., concur.

---

3. See Tit. 22, § 24, Code of Alabama 1940, as amended (Recomp.1958), which prescribes that death certificates must be registered for all fetal deaths where the fetus has advanced to or beyond the 20th week of uterogestation.