334 So.2d 885 (1976)
Christine HORTON et al.
v.
NORTHEAST ALABAMA REGIONAL MEDICAL CENTER, INC., et al.
SC 1571.
Supreme Court of Alabama.
July 2, 1976.
*886 Wilson, Propst & Isom and Gordon F. Bailey, Jr., Anniston, for appellants.
James M. Campbell, Anniston, for appellees.
PER CURIAM.
This appeal by Christine Horton and Lawrence Wayne Horton is from judgment in favor of appellees entered after grant of motion for summary judgment. Appellees are Northeast Alabama Regional Medical Center, Inc. (Medical Center), Anniston Memorial Hospital and City of Anniston, Alabama.

Case
The Hortons filed suit against the Medical Center, Anniston Memorial Hospital and the City of Anniston, for damages resulting from injuries allegedly incurred by Christine Horton while a patient at the Medical Center in Anniston, Alabama. Plaintiff, Christine Horton, sues in count one of the complaint for breach of implied contract to properly nurse and care for her, and in count two of the complaint for negligent or wanton misconduct in the same regard. She alleges in count one that:
"1. On or about the 21st day of October 1974, Plaintiff, Christine Horton and Defendants entered into an agreement by which Defendants promised to nurse and provide medical treatment and medical care for the Plaintiff, Christine Horton.
"2. Defendants breached the agreement by failure to properly nurse and *887 care for the Plaintiff, Christine Horton, following her surgical operation and as a proximate result of the Defendants' breach of said agreement, the Plaintiff, Christine Horton, required additional or corrective surgery, incurred considerable medical and drug expenses, suffered great pain and mental anguish and became permanently injured."
In count two she alleges the following:
"1. On or about the 22nd day of October, 1974, in the City of Anniston, Calhoun County, Alabama, the Defendants' (sic) negligently or wantonly caused or allowed the Plaintiff, Christine Horton, to be pushed, shoved and generally treated in a rough manner, and said treatment caused Plaintiff to be injured so that corrective surgery had to be performed on the Plaintiff, Christine Horton.
"2. As a proximate consequence of the Defendants' said negligence or wantonness, the Plaintiff, Christine Horton, was caused to suffer the following injuries and damages: Plaintiff, Christine Horton's right ovarian vein was split or severed; Plaintiff, Christine Horton, suffered internal bleeding; Plaintiff had to be subjected to a second operation; Plaintiff, Christine Horton, suffered great physical pain and mental anguish; Plaintiff has suffered permanent injuries."
Plaintiff, Lawrence Wayne Horton, alleges:

"COUNT THREE
"1. On or about the 21st day of October, 1974, the wife of Plaintiff, Lawrence Wayne Horton, one Christine Horton, and the Defendants entered into an agreement by which the Defendants promised to nurse and provide medical treatment and medical care for Christine Horton.
"2. Defendants breached the agreement by failing to properly nurse and care for the Plaintiff's wife, Christine Horton, following her surgical operation and as a proximate result of the Defendants' breach of said agreement, the Plaintiff's wife, Christine Horton, required additional or corrective surgery, incurred considerable medical and drug expenses, suffered great pain and mental anguish and became permanently injured.

"COUNT FOUR
"1. On or about the 22nd day of October, 1974, in the City of Anniston, Calhoun County, Alabama, the Defendants negligently or wantonly caused or allowed the wife of Plaintiff, Lawrence Wayne Horton, one Christine Horton, to be pushed, shoved and generally treated in a rough manner so as to cause her to be injured, which injury required that corrective surgery be performed on the Plaintiff's wife.
"2. As a proximate consequence of the Defendants' said negligence or wantonness, the Plaintiff's wife, Christine Horton, was caused to suffer the following injuries and damages: Plaintiff Christine Horton's right ovarian vein was split or severed; Plaintiff suffered internal bleeding; Plaintiff had to be subjected to a second operation; Plaintiff, Christine Horton, suffered great physical pain and mental anguish; Plaintiff has suffered permanent injuries."
The Medical Center and the City of Anniston filed a 12(b)(6) motion to dismiss. The trial court, following a pretrial hearing on the motions, ordered defendants to file affidavits and other evidence in support of the motions and proceeded to treat them as motions for summary judgment. Then, defendants filed motions for summary judgment based on the pleadings, affidavit of Austin Letson, and Anniston City Ordinance No. 74-0-13. After consideration *888 of the affidavit and other evidence presented, the trial court granted defendants' motions for summary judgment, citing Hembree v. Hospital Board of Morgan County, 293 Ala. 160, 300 So.2d 823, as authority.
We reverse and remand.

Issue
Did the trial court err in granting defendant's motions for summary judgment on the authority of Hembree v. Hospital Board of Morgan County?

Facts
Plaintiff, Christine Horton, was admitted to Northeast Alabama Regional Medical Center, formerly Anniston Memorial Hospital, in the City of Anniston, Alabama, on 21 October 1974. On 22 October 1974, a hysterectomy was performed on her.
The Medical Center, where Christine Horton was admitted and where the alleged mistreatment occurred, functioned prior to 7 May 1974, under the name of Anniston Memorial Hospital. That entity was organized, and operated, under the provisions of Code of Ala, Tit. 22, § 189, and Chapter 15 of the Code of the City of Anniston of 1961. Under that Code Section it was a municipal hospital.
However, on 7 May 1974, the Council of the City of Anniston, Alabama, adopted an ordinance which created and established the Regional Medical Center Board; the Board to be a body corporate and politic as permitted by Code of Ala, Tit. 22, § 190(1). The Regional Medical Center Board was doing business as Northeast Alabama Regional Medical Center at the time the alleged causes of action arose.

Decision and Opinion
It is axiomatic that summary judgment is to be granted to the moving party only where it is clear from the evidence presented that there is no genuine issue as to any material fact. On such motion the court cannot try issues of fact. Rather, it may only ascertain whether there are issues for a jury to determine. If, under any conceivable set of circumstances the plaintiff may recover, the trial court must deny the motion for summary judgment. Rule 56, ARCP; Donald v. City National Bank of Dothan, 295 Ala. 320, 329 So.2d 92.
In this case the action brought by the plaintiffs was in tort, in counts two (2) and four (4), and in contract, in counts one (1) and three (3). The trial court granted defendants' motions for summary judgment on the authority of Hembree v. Hospital Board of Morgan County, 293 Ala. 160, 300 So.2d 823. In Hembree the action sounded in tort only. The defense of governmental immunity was a bar to recovery since no express or implied contract existed.
The question presented here is whether, under the pleadings and evidence before the court, there was a cause of action upon which the plaintiffs might possibly recover. We answer in the affirmative.
The defense of governmental immunity to actions in tort against county hospital boards no longer exists. In Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631, full effect was given to the legislative intent expressed in Code of Ala, Tit. 22, § 204(24). That intent was not to immunize county hospital boards. Those boards have the power "* * * to sue and be sued * * *." The Hortons could maintain actions in tort under counts two (2) and four (4) of their complaint but for the fact that Lorence, decided on 10 July 1975, was given prospective effect only. Christine Horton incurred her injury on 22 October 1974. The tort actions are therefore barred by the defense of governmental immunity.
*889 The appellants argue that such immunity as applied in Hembree is not applicable here. This is based upon the contention that by adoption of Ordinance Number 74-0-13, establishing the Medical Center Board, the Council of the City of Anniston created an entity apart and separate from all county governmental ties. They argue that by creating the Medical Center Board, in compliance with Code of Ala., Tit. 22, § 190(1), the hospital was at the time of the alleged injury a public corporation so far divorced and removed from governmental origin that it lay unprotected by any shields of immunity. Such is not true. The evidence shows that the Medical Center Board was created under Section 190(1), but this provision in no way removes the protective cloak of governmental immunity provided by the cases before the decision in Lorence, supra. The City Council merely withdrew the City of Anniston from operation of the hospital and placed its operation in a public body under authority of Section 190(1). However, the powers, obligations and duties of such a public body are the same as those of county hospitals, as provided in Code of Ala., Tit. 22, § 204(18)-(30), since those Code Sections are, by reference, adopted in Tit. 22, § 190(1).
Code of Ala., Tit. 22, § 190(1) is as follows:
"§ 190(1). Incorporation of public bodies created pursuant to this chapter; powers of such corporations.Any public body heretofore or hereafter created and established by ordinance or resolution pursuant to chapter 6 of Title 22, Code of Alabama (1940) may become a body corporate and politic under the name set forth in such ordinance or resolution by filing a certified copy of such ordinance or resolution with the secretary of state, to be recorded in his office. The members of such public body shall constitute the members of the corporation until they are succeeded by other members as provided by said ordinance or resolution. Neither the members of the corporation nor its directors or officers shall be personally liable for the debts, torts, or undertakings of the corporation.
"The corporations provided for by this section shall have all the power and authority of county hospital boards as provided for by an act approved June 2, 1949, [§§ 204(18)-204(30) of this title], except that such corporations shall not have or exercise any power which is inconsistent with or repugnant to the provisions of the ordinance or resolution under which it came into existence.
"This section shall be deemed to be cumulative. (1957, No. 63, appvd. June 21, 1957.)"
Adoption by reference in § 190(1) of Tit. 22 of the provisions of §§ 204(18)(30), as to county hospitals, clearly places in the public bodies operating thereunder the identical powers and immunities that may have existed at the time of the alleged injury. As of 22 October 1974, county hospital boards were immune from tort liability as held in Hembree; Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328 and Garrett v. Escambia County Hospital Board, 266 Ala. 201, 94 So.2d 762.
However, the immunity provided by the cases cited, which were prior to Lorence (e.g. Hembree and Smith), does not protect defendant Regional Medical Center Board from actions for breach of contract, either express or implied. Under the pleadings an action may be maintained in this case for breach of implied contract. Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817. Here the terms as well as the "specified" manner of performance may be implied from the facts. We arrive at this determination by the intendments manifested from the conduct and actions of the parties rather than by any expressed agreement or assent. Berry v. Druid City Hospital Board, 10 ABR 1060.
*890 Whether the alleged injury was the result of nonperformance or of misfeasance in performance of a contract, the action arising therefrom is in contract, not in tort. Druid City Hospital Board, supra.
Here, plaintiffs alleged a breach of promise to nurse and provide medical treatment and care. It would be illogical for a patient to enter a hospital for surgery, anticipating and expecting that corrective surgery would be required, owing to injuries resulting from improper treatment and care while in the hospital recovering from surgery. One would logically expect proper treatment and care after surgery.
REVERSED AND REMANDED.
HEFLIN, C.J., and BLOODWORTH, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, J., dissents.
EMBRY, Justice (concurring specially):
One more step. As I see it, actions may be maintained for breach of contract implied in fact or for breach of quasi-contract. The terms of a quasi-contract, one implied in law, are defined by duties imposed by law upon the Hospital Board. The duty defines the contract in the case of quasi-contracts while the contrary is true as to express contracts or those implied in fact.
I reiterate what I expressed about this subject in dissenting opinions in Green v. Hospital Building Authority of City of Bessemer, 294 Ala. 467, 318 So.2d 701; Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631; and by special concurrence in Berry v. Druid City Hospital Board, 10 ABR 1060. The duty existing under a constructive contract, owed by a hospital to use due care in the treatment of its patients, demands that a remedy for the breach thereof be available; an action ex contractu.
HEFLIN, C.J., and BEATTY, J., concur.
MADDOX, Justice (dissenting).
My position on the issue of "governmental immunity" in cases such as this one was first stated in Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 256 So.2d 281 (1972), where I wrote as follows:
"We must have a reasonable respect for the doctrine of stare decisis and the division of powers between the Executive, Legislative and Judicial branches of our government. Alabama may one day return to the rule of governmental responsibility with which we began as a State. The frequency of the appeals to this Court asking that the rule be changed is some evidence that the constitutional provision granting governmental immunity may have served whatever purpose it was intended to serve and maybe it should not be abandoned. But that is a question addressing itself to the Legislature in initiating and proposing an amendment to the Constitution. The Legislature already has power, without necessity for a constitutional change, to adjust claims against the State.
The Legislature, when it deems necessary, can pass relief bills to compensate individuals who have been harmed. In fact, the Legislature now provides some relief to persons injured by appropriating money to the State Board of Adjustment for payment of claims against the State. Title 55, §§ 333-344, Code of Alabama, 1940 (Recomp.1958). See The Alabama State Board of Adjustment and the Law, 19 Ala.Law. 397 (1958). Therefore, a claimant is not completely without some recourse if he suffers injury because of the action of State officials in carrying out their duties."
In Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328 (1971), I specially concurred, stating:
"I believe this appeal to us for the second time points out the futility of attempting to widen the crack made in the `governmental immunity' wall by Paul v. *891 Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969).
"My own personal view is that this Court should have never insulated county operated hospitals from tort liability in cases involving paying patients on the ground that counties operating such hospitals are engaged in a `governmental function.' But it has, and not on just one occasion, but on several. See Jenkins v. Houston County Hospital Board, 284 Ala. 180, 223 So.2d 583 (1969); Thompson v. Druid City Hospital Board, 279 Ala. 314, 184 So.2d 825 (1966); Clark v. Mobile County Hospital Board, 275 Ala. 26, 151 So.2d 750 (1963); Garrett v. Escambia County Hospital Board, 266 Ala. 201, 94 So.2d 762 (1957); Moore v. Walker County, 236 Ala. 688, 185 So. 175 (1938); Laney v. Jefferson County, 249 Ala. 612, 32 So.2d 542 (1947).
"As I said as author of the opinion in Hutchinson v. University Board of Trustees, (decided November 11, 1971), 288 Ala. 20, 256 So.2d 281, the question of governmental responsibility is a pressing one, but the Legislature is the body which will have to deal with it in view of the interpretations which have been heretofore rendered with regard to governmental immunity.
The Legislature has not acted and this Court has been called upon once again to distinguish between actions ex contractu and actions ex delicto. The problem which we here face was created by Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969), which followed the questionable doctrine set out by a divided court in Vines v. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436 (1956).
As the only member of the Court who believes that this is a legislative rather than a judicial matter, I hesitate to continue to dissent, but I firmly believe that a separation of powers question is presented and that this Court should not overrule precedents which were so recently established in Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328 (1971), and Hembree v. Hospital Board of Morgan County, 293 Ala. 160, 300 So.2d 823 (1974). The majority says that Smith and Hembree are distinguishable, holding:
"However, the immunity provided by the cases cited, which were prior to Lorence (e.g. Hembree and Smith), does not protect defendant Regional Medical Center Board from actions for breach of contract, either express or implied."
That statement in the majority is wholly incorrect, in my opinion. In Smith, Hembree, and here, it is obvious that in each case, the plaintiff filed a contract action, as Justice Jones candidly stated in his dissent in Hembree, "in order to circumvent the sovereign immunity doctrine, . . . which circumvention had its inception in Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969)." Therefore, we have a situation where the majority bases its decision on Paul (a "circumvention") which followed Vines (a "circumvention" of the doctrine of statute of limitation).
I believe that the Court should re-examine the traditional rule regarding the distinction between contract and tort. In Mobile Life Insurance Co. v. Randall, 74 Ala. 170 (1883), the following is stated:
"Mr. Justice Parsons, in Wilkinson v. Moseley, 18 Ala. 288, said: `Perhaps the best criterion is this: if the cause of action, as stated in the declaration, arises from a breach of promise, the action is ex contractu; but, if the cause of action arises from a breach of duty growing out of the contract, it is in form ex delicto, and case.' In 2 Wait's Ac. and Def. 100, the doctrine is thus stated: `When there is a contract, either express or implied from which a common law duty results, an action on the case lies *892 for the breach of that duty; in which case, the contract is laid as mere inducement, and the tort arising from the breach of duty as the gravamen of the action. Thus, if a lawyer or physician is engaged by special contract to render professional service, and, in the performance of such service, he is guilty of gross ignorance or negligence, an action on the case will lie against him, notwithstanding such special contract.' See, also, Pomeroy on Rem. §§ 567, 573.. . ."
In view of the above, I believe that both Smith and Hembree were correctly decided and I would follow them in this case.
Since a majority of this Court now holds that a patient can sue in tort, Lorence, I see no reason to cloud the law by use of the "circumvention" device. Why not treat Mrs. Horton the same as Mr. Lorence was treated, and allow her to maintain her tort action? That is exactly what it is, has been, and as far as I am concerned, will always be. Therefore, I must respectfully dissent.