### AMERICAN BRAKE SHOE CO. v. GRYBAS et al.

#### Civil Action No. 3847.

District Court, D. Massachusetts.

Nov. 9, 1945.

Stuart C. Rand, Marcien Jenckes, and Choate, Hall & Stewart, all of Boston, Mass., for plaintiff.

Sidney S. Grant and Grant & Angoff, all of Boston, Mass., for defendants.

FORD, District Judge.

The plaintiff, a Delaware corporation, has brought a declaratory judgment suit in accordance with the provisions of Section 274d of the Judicial Code, 28 U.S.C.A. § 400, against the named defendants, "members of a class constituting Local Union No. 2333 of the United Steelworkers of America." The defendants have filed a motion to dismiss the complaint on grounds that will be referred to later.

The complaint alleges that all the defendants are citizens of Massachusetts and the amount in controversy exceeds three thousand dollars, exclusive of interest and costs; that the defendant Grybas is the president of Local Union No. 2333 (admittedly a voluntary association), and the defendants Diaz, Gonzalves, DeRoche and Gomez, are, or have been, the other officers of the local union and members of

the grievance committee thereof; that the defendants are sued as representatives of Local Union No. 2333 (see Pickett v. Walsh, 192 Mass. 572, 590, 78 N.E. 753, 6 L.R.A.,N.S., 1067, 116 Am.St.Rep. 272, 7 Ann.Cas. 638), and at the present time are employees of the plaintiff.

There is an allegation in the complaint that the plaintiff made a collective bargaining agreement with Local Union No. 2333 on August 21, 1942 (extended later until August 21, 1944 by another agreement between the plaintiff and the defendants Grybas, Dias and DeRoche, acting for the union).

Sections 3 and 6 of the contract referred to are pertinent to the controversy here and are as follows:

"Section 3. Settlement of Disputes— The Company agrees to recognize a committee composed of three of its employees designated by the Union, whose duties are to take up any grievances that may arise during the term of this agreement. They shall be known as the Shop Committee.

"Grievances, so far as practical, shall be taken up after quitting time.

"Should differences arise between the Company and the Union as to the meaning or application of the provisions of this agreement or should trouble of any kind arise in this plant, there shall be no slowdown or suspension of work, but an earnest effort shall be made to settle such differences immediately in the following manner:

"(a) Between the aggrieved employee and the foreman.

"(b) Between a member or members of the Shop Committee and the Superintendent of the plant. All grievances submitted by the Committee shall be in writing.

"(c) Between a representative of the national organization of the union and the superintendent.

"(d) In the event no satisfactory adjustment of any grievance can be obtained by the above methods, a conciliator from the state or federal department of labor shall be called in to mediate.

"The Shop Committee and the Superintendent shall hold regular monthly meetings on the last Thursday of each month at 7:30 PM at the Company office. Grievances that are to be discussed at the meeting shall be given to the Superintendent, in writing, at least 24 hours in advance of the meeting. No meeting of the Shop Committee shall be held on Company time."

"Section 6. Discharge Cases—In event an employee shall be discharged and he believes that he has been unjustly dealt with, such discharge shall constitute a case arising under Section 3. In event it should be decided that an injustice has been dealt such employee with regard to discharge, the Company shall reinstate such employee and pay full compensation at the employee's regular rate for the time lost. All such cases shall be taken up and disposed of within five days from the date of discharge.

"The management of the plant and the direction of the working forces, including the right to hire, suspend or discharge for proper cause, or the right to lay off because of lack of work or other legitimate reasons, is vested exclusively in the Company provided that this will not be used for purposes of discrimination against any member of the Union."

The complaint stated further that the defendant Grybas was discharged from the plaintiff's employ on March 6, 1944, for cause, to wit: An assault on a fellow employee and the destruction of property of the plaintiff, and that under date of April 12, 1944, under Section 3 of Executive Order 9017 dated January 12, 1942, 50 U.S.C. A.Appendix § 1507 note, and Section 7(a) (1) of the War Labor Disputes Act, 50 U. S.C.A.Appendix § 1507(a) (1), there was certified to the National War Labor Board, Region 1, as a dispute, the matter of the discharge of said John Grybas. Under date of June 6, 1944, in accordance with the provision of Section 3(b) of the contract above set out, the defendants, Dias, DeRoche, and Gonzalves, acting as the grievance committee of the union, submitted a written grievance to the superintendent of the plaintiff company based on discrimination against Grybas because of his activity as president of the Local Union.

On June 27, 1944, the National War Labor Board, Region 1, issued a directive order that the dispute be settled in accordance with the grievance proceedings set forth in Section 3 of the contract referred to above and in the event this failed the grievance be submitted for final arbitration to an arbitrator. On August 25, 1944, the National War Labor Board denied the

plaintiff's petition for a review of this order. On November 8 the National War Labor Board of Region 1 designated an arbitrator and on January 12, 1945, the arbitrator made and filed a report which disclosed a finding of no discrimination against any union member and inexcusable conduct on the part of the discharged employee Grybas. The report of the arbitrator concluded with a finding that the plaintiff restore Grybas to his former position on or before January 20, 1945, and further found that Grybas should not be entitled to any compensation for time lost by reason of his separation from employment on March 6, 1944, until he reported to work. On February 27, 1945, the National War Labor Board for Region 1 entered a directive order on the arbitration award, with its industry members dissenting in substantially the same terms as the finding of the arbitrator. On May 22, 1945, the National War Labor Board, with the industry members dissenting, denied the plaintiff's petition for a review of the directive order of February 27, 1945, and confirmed the order.

The controversy now arises because of the demand of the defendant Grybas to be reemployed in accordance with the finding of the arbitrator, and the plaintiff here seeks a declaration of its rights and other legal relations with the defendants concerning the reemployment of Grybas.

The main contentions of the defendants in support of their motion are: (1) The suit is essentially one against the chairman and members of the National War Labor Board and they are indispensable to a determination of this suit; (2) the court lacks jurisdiction over the subject matter; (3) the suit is in effect a suit against the United States acting through the National War Labor Board, and the United States has not consented to be sued; and (4) the complaint fails to state a claim upon which relief can be granted.

In support of the contention that the present suit is one directed against the chairman and members of the National War Labor Board and they should be made parties, the defendants contend that the present suit is in effect a request for an interpretation and adjudication of action of the War Labor Board; that a declaratory judgment is requested with respect to the directives of the National War Labor Board. In support of this contention they argue that since the War Labor Board, despite the protest of the plaintiff that the Board lacked jurisdiction of the matter in dispute because of the terms of the collective bargaining agreement (cf. Oil Workers Inter. Union, Local No. 463, et al. v. Texoma Natural Gas Co., 5 Cir., 146 F.2d 62), has assumed jurisdiction under the War Labor Disputes Act, this court has no jurisdiction whatsoever. It seems to me that the defendants are in error.

■ This suit, invoking the diversity jurisdiction of this court, seeks a declaration of rights under the terms of a contract between the plaintiff and the local union whose interests the complaint states are adequately represented by the defendants named. The plaintiff here does not seek any relief against the National War Labor Board. The directives of the National War Labor Board are merely advisory. This court has no jurisdiction to enforce or review orders of the National War Labor Board. The latter has no power to create rights or determine legal liability. It can enforce its directives only by imposing sanctions for failure to follow "advice." National War Labor Board et al. v. Montgomery Ward & Co. Inc., 79 U. S.App.D.C. 200, 144 F.2d 528, 530; Employers Group of Motor Freight Carriers, Inc., et al. v. National War Labor Board et al., 79 U.S.App.D.C. 105, 143 F.2d 145; England et al. v. Devine et al., D.C., 59 F.Supp. 379, 383. The assumption of jurisdiction by the Board to hear a labor dispute under the War Labor Disputes Act does not deprive the courts of jurisdiction to determine rights between the parties to a collective bargaining agreement. As the court stated in Oil Workers Inter. Union, Local No. 463, et al. v. Texoma Natural Gas Co., supra, 146 F.2d at page 65: "The National War Labor Board is not, under the law, vested with judicial functions, nor does it have the power to enforce its determinations, called 'directives', upon the parties to a controversy before it. It is not a substitute for the courts, and the pendency of a controversy before it is not a bar to a suit in the courts."

■■ For the reasons stated, the court concludes that the members of the National War Labor Board are not necessary nor indispensable parties to this suit; the suit is not against the United States; it is a suit seeking a declaration of rights under a contract; this court under its diversity jurisdiction has jurisdiction of

the subject matter and of the parties[1] and the adversary nature of the controversy is such that I believe this court is an appropriate tribunal to judicially determine the rights and relations of the parties under the contract in question. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S. Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

My attention has been called to Judge Wyzanki's opinion in the case of Worthington Pump and Machinery Corp. v. Local 259, United Electrical Radio and Machine Workers of America et al., D.C., 63 F.Supp. 411, decided October 29, 1945, and the conclusions he reached. He declined, in the exercise of his discretion, to entertain that suit, because proceedings were still pending before the National War Labor Board. Also, the jurisdictional difficulty present there is lacking here.

The motion to dismiss is denied.

---

[1] This is a class action; only the citizenship of the representatives need appear. Supreme Tribe of Ben-Hur v. Cauble et al., 255 U.S. 356, 366, 41 S.Ct. 338, 65 L. Ed. 673; Philadelphia Local 192 of American Fed. of Teachers v. American Fed. of Teachers, D.C., 44 F.Supp. 345, 347; International Allied Printing Trades Ass'n v. Master Printers Union, D.C., 34 F. Supp. 178, 181; Moreschi v. Mosteller, D.C., 28 F.Supp. 613, 617; Moore's Federal Practice, Vol. 2, Sec. 17.17, p. 2100.