This matter comes before the court on the petition of Angelo Zucaro, John Masso, Louis Ranieri, George Dietze and Anthony DeMello, five of twenty-one persons employed as grave diggers by the defendant receivers.
The petition is joined in by cemetery employees, Local Union No. 907 of I.B.T.C.W. and H. of America, an unincorporated association of this state.
I am of opinion that the petition filed herein must be dismissed and the relief sought by the petitioners denied for the following reasons.
In brief, the relief which the petitioners seek seems to be twofold: first, the enforcement by this court of an order or directive issued by the National War Labor Board dated May 4th, 1945; secondly, that this court, irrespective of the action of the federal agency, should instruct the receiver defendants as officers of the court to increase the wages paid to the petitioners and their fellow workmen from .80c per hour to the amount fixed by the National War Labor Board by its directive, namely .875c per hour.
There are certain other terms and conditions of employment governing the relations between the receiver defendants and the petitioners and their fellow employees, which are not important for the purposes of this discussion.
The authority of the National War Labor Board stems from Executive Order No. 9017, promulgated by the President January 12th, 1942 (50 U.S.C.A. App. p. 582). Later, in June, 1943, the Congress enacted the War Labor Board Disputes Act giving the power to deal with disputes that threatened to lead to substantial interference with the war (50 U.S.C.A. App. p.578). Shortly following the termination of hostilities the National War Labor Board, as constituted during the war, passed out of existence.
It seems to be established without room for doubt or dispute that the National War Labor Board had no power either *Page 278 
under Executive Order No. 9107 or under the War Labor Disputes Act, to enforce its orders in a court, or by the imposition of penalties. It has been repeatedly held that the Board acted only in an advisory capacity to the executive and that it had no existence as a tribunal to determine legal rights and obligations or to protect and enforce such rights.
Certain machinery was set up under the War Powers Act to enforce compliance with the directives or mandates of the National War Labor Board. Included was the authority granted to the Director of Economic Stabilization to withdraw from a non-complying employer any priority, benefits, privileges, or contracts until compliance with the orders of War Labor Board had been effected. Furthermore, the authority of the President to seize plants engaged in war production to prevent interruption of the war effort has been upheld by judicial decision.
The courts of the United States have many times held that directives of the National War Labor Board are not mandatory or enforceable in the courts — being merely advisory. No jurisdiction existed in any court to enforce an order of the National War Labor Board.
Most notable of the decisions is the Montgomery Ward Case
where the United States Court of Appeals for the District of Columbia said:
"In our opinion the court should have dismissed the complaint upon the defendants' motion. As we found in the Employers Group case, no statute makes orders of the National War Labor Board enforceable or reviewable. It is true that the Board order there involved was issued before and the one here involved after the War Labor Disputes Act and Executive Order 9370. But as we pointed out in that case the War Labor Disputes Act does not make the Board's orders enforceable or reviewable." National WarLabor Board v. Montgomery Ward Co., 144 Fed. Rep. 2d528 (writ of certiorari denied by United States Supreme Court, November 13th, 1944).
Similarly, the appeal to the discretion of this court that it should instruct its officers to increase the compensation of its employees should be denied. The receivers have made a *Page 279 
full and complete disclosure of the treatment accorded the petitioners and their fellow workmen, and I am satisfied that they are fairly paid and generously treated.
When the receivers were appointed the cemetery was in a disorganized run-down condition, and the company was insolvent. At that time such of the petitioners as were in the company's employ, and others who performed similar work, were paid at the rate of .40c per hour. As a result of the action of the receivers the hourly wage of these grave diggers has been increased to .80c per hour, or double the former amount. In addition thereto grave diggers receive $10 for each body removed, and are permitted to retain all tips given them by persons who avail themselves of the grave digging service. Moreover, the receivers have created an overtime schedule at the rate of $1.20 per hour, making $7.20 additional pay, so that the "take-home" pay of the petitioners and persons performing similar service at this time is $45.60 for fifty-four hours of work, plus their share of the $10 for each body removed, and tips — the amount of the latter being unknown to the receivers.
The receivers' affidavits further disclose that the "take-home" pay of the petitioners and their fellow workmen exceeds that which is paid to the men doing similar work in five leading cemeteries in the metropolitan area.
An order may be submitted denying the relief sought and dismissing the petition. *Page 280