49 So.2d 214

### ADAMS v. REPUBLIC STEEL CORP.

7 Div. 50.

Supreme Court of Alabama.

Oct. 19, 1950.

Rehearing Denied Dec. 14, 1950.

Hawkins & Copeland, of Gadsden, for appellant.

Benners, Burr, Stokely & McKamy, of Birmingham, and Hood, Inzer, Martin & Suttle, of Gadsden, for appellee.

SIMPSON, Justice.

Suit by appellant on the common count for work and labor done from December 25, 1943, to April 1, 1947. From an adverse ruling on the pleadings, the plaintiff took a nonsuit and has appealed.

The real question is whether or not the plaintiff is entitled to retroactive pay as a former employee of defendant corporation, as fixed by the contract executed April 29, 1947, between plaintiff's bargaining agent, United Steel Workers of America (CIO), and defendant.

The facts decisive of the question were developed by the defendant's special pleas and the plaintiff's demurrer and replications to these pleas. It will not be necessary to deal separately with the several assignments of error or the various pleadings, since the only question is whether, from these developed facts, the allegations show plaintiff, as a former employee of defendant, to be entitled to retroactive pay or whether he was barred of recovery by reason of not having filed any claim with the defendant within the 120-day period prescribed by § 2, Article 7 of the aforesaid contract of April 29, 1947, which pro-

vided: "Section 2—Employees Eligible. The foregoing lump sum payments shall be made to employees who are on the plant payroll on the date the plant standard hourly wage rates are officially established, *and to former employees who are not on the plant payroll on the date the plant standard hourly wage rates are officially established provided such former employees file individually signed requests therefor in writing with the Company within 120 days after the date on which the standard hourly wage rates are officially established."* (Emphasis supplied.)

We will first state the facts as disclosed by the pleadings and the respective contentions of the parties.

The plaintiff's work, as a production and maintenance employee of the defendant corporation, for which claim is made was during portions of the year 1943–1944. But continuously from 1942 until the filing of this suit and thereafter, the United Steel Workers of America, a labor union, was the certified (by the National Labor Relations Board under federal law) representative of all the employees of defendant as their exclusive bargaining representative to bargain with the defendant with reference to their wages, hours, rates of pay and working conditions; during all this time these matters were agreed upon and established from time to time by written contracts between the said union and the defendant, and the plaintiff had been paid in accordance with these contracts for all work and labor done and had duly acknowledged receipt therefor. In 1942 a contest arose, among other matters, as to whether certain jobs were subject to reclassification under a uniform standard to abolish certain alleged wage rate inequities and to effect a more stabilized rate structure. The corporation and the union, as the bargaining agent of the employees, set up a joint commission to study the question, to work out the details and make recommendations accordingly. Many grievances, including the claimed intra-plant wage rate inequities, and the necessity for reducing job classifications, were submitted by the union to this commission. Later the National War Labor Board entertained jurisdiction to solve the grievances and the Board entered a directive specifying certain "guideposts to facilitate collective bargaining directed to the solution" of this longstanding problem. The directive further stipulated that any agreement reached between the company and union should be transmitted to the commission for its approval before becoming effective. The defendant and the union, after many conferences and much negotiation over this long period, did on April 29, 1947, enter into the written agreement aforesaid, which, among other things, reclassified various jobs and abolished certain wage rate inequities, and this agreement was approved by the United States Department of Labor Steel Commission. This agreement was made effective as to the parties here by a complete bargaining contract dated April 30, 1947, executed between the defendant and the union, approving the April 29, 1947, agreement. The effect of these two agreements was to establish a higher rate of pay for the job in which the plaintiff had been classified and, had he, as a former employee, filed his claim within the 120-day period prescribed by said (above quoted) § 2, Article 7 of the contract of April 29, 1947, he would have been, under that contract, entitled to a certain amount of retroactive pay for the 1943–1944 period claimed.

The appellee corporation, as indicated by its several special pleas, rests its defense on the theory that the contract is the basis of the plaintiff's claim and suit and that plaintiff, being subject to all the terms and conditions thereof, is barred of recovery for noncompliance with said § 2 with reference to "former employees."

The answer of plaintiff in refutation of this contention is that he does not sue on the contract, that his right to sue is on an implied contract arising as follows: On December 25, 1943, the union contract with defendant expired and the union threatened to strike to achieve certain objectives, including reclassification of jobs, adjustment of rates of pay, etc., but there then being a national emergency (Second World War), the President of the United States sent a telegram recommending a continu-

ation of work under the old contract. The case aforementioned between the union and the defendant to settle these various problems was still pending before the National War Labor Board and in response to the President's telegram an "interim directive order" was entered in the case suggesting compliance with the President's telegram with the understanding that if the parties should make a new work contract, or if the Labor Board should, after hearing, make an order to include wage rate adjustments, these adjustments should be computed and applied retroactively from the said December 25, 1943. Under these conditions uninterrupted production continued. On November 25, 1944, the Board did find wage rate inequities to exist and "directed" that the parties *negotiate* to eliminate them with the same retroactive application. Pending these negotiations, the parties in 1945 entered into another collective bargaining contract, which contract contained the same feature with respect to retroactive application of wage rate adjustments. Negotiations continued, certain formulae were devised to work out this and other long-standing problems of contest between the defendant and the union, and these negotiations culminated in the adoption of the April 29, 1947, contract aforesaid, which contained the 120-day condition for the filing of claims by former employees. § 2, supra.

Boiled down, the replications to the defendant's pleas seek to scout some obligations of the April 29, 1947, contract but still endeavor to claim its benefits on the theory that since the Board's directive in response to the President's telegram and the collective bargaining contract of 1945 provided for retroactive application of any wage rate adjustments which might be determined should an agreement relative thereto be negotiated, plaintiff can recover on a *quantum meruit* for work and labor done under an implied contract; that working under such an understanding gave him such a vested right that his bargaining agent, the union, was without power to contract away or limit that right by the imposition of the 120-day limitation.

Such a position seems to us manifestly antistrophic. The trial court rejected it and we must affirm the holding. Any right plaintiff might have acquired for retroactive pay flows from the April 29, 1947, contract and he cannot claim its benefits, meanwhile repudiating some of its vital provisions. *"If he claims the benefits, he also assumes the burdens."* (Emphasis supplied.) Michie v. Bradshaw, 227 Ala. 302, 308(4), 149 So. 809, 814.

The action of the War Labor Board in response to the telegram of the President of the United States as regards any suggestion about retroactive pay cannot form the basis of an implied contract, or quasi contract. We judicially know that the Board was created in view of the declaration of war and no strike agreement of representatives of labor and industry by Executive Order No. 9017, 50 U.S.C.A. Appendix, § 1507 note, to aid in the voluntary adjustment and settlement of the various problems which might arise between them. The Board had no power to determine legal rights nor to invoke judicial process to enforce its orders. Its directions or orders were wholly conciliatory in character, involving no element of legal effectiveness. Its actions, as that taken here, were directory and advisory merely. National War Labor Board v. Montgomery Ward, 79 U.S.App.D.C. 200, 144 F.2d 528; Employers Group of Motor Freight Carriers v. National War Labor Board, 79 U.S.App.D.C. 105, 143 F.2d 145; National War Labor Board v. United States Gypsum Co., 79 U.S.App. D.C. 239, 145 F.2d 97; Martin v. Campanaro, 2 Cir., 156 F.2d 127; Clem S. Walter, Jr. v. State, 34 Ala.App. 268, 38. So.2d 609, 610; American Brake Shoe Co. v. Grybas, D.C., 63 F.Supp. 414, 416; May Department Stores Co. v. Brown, D. C., 60 F.Supp. 735, 737; Masso v. Burk, 138 N.J.Eq. 276, 47 A.2d 732.

There was no obligation to pay the plaintiff anything as a wage rate adjustment in 1943 or 1944. He was paid his full wages under then existing contract for all work and labor done. Whatever wage adjustment might later be achieved for the pro-

duction and maintenance employees was conditional, subject to such success as the long negotiations might bring forth, and could not possibly have vested as a right in anyone until the end of such negotiations and the final execution of the agreement. So, the theory of liability of an implied contract to pay as of December 23, 1943, without any obligation to pay, rests on an obviously false premise. There can be no liability to pay where there is no obligation to pay.

The right to retroactive pay was purely conditional and no one could acquire any right until the condition happened or the contingency was performed. 2 Williston on Contracts (Rev.) 1062–1064. The conditional event in the case in hand did not occur until the contract of April 29, 1947, was negotiated and finally concluded.

■ The plaintiff is clearly in the posture of a third party beneficiary claiming rights under an agreement made between the union and the defendant and as such claimant he has no greater rights than as fixed by the terms of the contract.

The principle is thus stated in Teller on Labor Disputes and Collective Bargaining, Vol. One, § 168, pp. 500–501: "A third party for whose benefit a contract is made has no greater rights than those fixed by the terms of the contract * *. A member of a labor union who is employed under a collective bargaining agreement, and who is the beneficiary of the terms thereof, takes subject * * * to the provisions of the agreement * *." Of like import is the text in 17 C.J.S., Contracts, § 519(bb), p. 1137: "The rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto. To recover the beneficiary must bring himself within its terms * * *. In the case of a conditional promise, the condition of which has not been complied with, the beneficiary cannot sue."

■ The proper interpretation of the contract makes compliance with § 2 a condition prerequisite to any recovery by a former employee. Since, therefore, the only right the plaintiff had was under the contract the benefit of which he seeks, namely, retroactive pay, he is concomitantly bound by its terms, including the 120-day condition for the filing of his claim.

■ There can be no question but that the union was the legally constituted and exclusive bargaining representative of all the employees, including the plaintiff, U.S. C.A. Title 29, § 159(a), and as such was empowered to so contract with the defendant and bind the employees accordingly. Alabama Cartage Co. v. International Brotherhood of Teamsters, etc., 250 Ala. 372, 34 So.2d 576; J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 86 L.Ed. 762; Order of R. R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788; Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; Steele v. Louisville & N. R. Co., 323 U.S. 192, 199, 65 S.Ct. 226, 232, 89 L.Ed. 173.

■ And as such "statutory representative," the union was not "barred from making contracts which may have unfavorable effects on some of the members of the craft represented." Steele v. L. & N. R. R. Co., supra. "The workman is free, if he values his own bargaining position more than that of the group, to vote against representation; but the majority rules, and if it collectivizes the employment bargain, individual advantages or favors will generally in practice go in as a contribution to the collective result." J. I. Case Co. v. N. L. R. B., supra, 321 U.S. 339, 64 S.Ct. 581, 86 L.Ed. 762.

The cases thought to sustain the plaintiff's position, such as Elgin, Joliet & Eastern Ry. Co. v. Burley et al., 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, rationalize just such a theory as we have deduced. The Elgin case points out the distinction between (1) negotiations for a collective agreement or for the modification of one, as was the case here, which looked to the future for the establishment of rights, and (2) the settlement of rights already accrued. The court, speaking through Mr. Justice Rutledge, observed:

626

"The first relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

"The second class, however, contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. * * * In either case the claim is to rights accrued, not merely to have new ones created for the future." 325 U.S. 723, 65 S.Ct. 1290, 89 L.Ed. 1886.

As to the first, the holding concluded that it was within the power of the bargaining agent to contract for the individual employees, but as to the second class, under the language of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., as interpreted, the bargaining agent generally had no such authority. The principle regulating the first class is here controlling.

 It is, of course, true, as so ably presented by counsel for appellant, an implied contract may arise from conduct and intention of the parties. But we find the elements essential to establish one here to be lacking. As observed, all the work done by the plaintiff was under an express contract between his bargaining agent, the union, and the defendant. He was paid for that work and receipted for such payment. This item of intra-plant wage rate inequities, as well as many other features, such as abolishment of geographical differentials, establishment of paid vacations, etc., had been matters of contest between the union and the defendant for years. It was entirely problematical when the parties submitted their contest to the commission in 1942 and in 1943–1944 as to whether these questions would ever be settled, and it was entirely uncertain what benefits the plaintiff might acquire, if any, from such negotiations. As a result of the 1947 agreement, some pay was adjusted down, some adjusted up, and some perhaps remained constant. Some employees obtained a higher contract rate than previously, some a lower rate, and in instances some perhaps a rate even less than their previous rate, but the result finally to be achieved was conditioned upon the contingency of the contracting parties reaching an agreement. Certainly the circumstances disclosed did not give rise to an implied contract, but sustained the allegations of the pleas that recovery rests solely on the express contract made between the union and the defendant. The plaintiff obviously could not have maintained a suit against the defendant on any implied contract for the recovery of retroactive wages on account of any wage rate inequities if the contract of 1947 had not been made. Being so, the binding effect of § 2, limiting his right to make claim therefor to 120-days, is conclusively governing. He cannot recover under the agreement without being bound by its terms. If he seeks the benefits he must take the detriments.

We think the ruling below well sustained.

Affirmed.

BROWN, FOSTER, LIVINGSTON, LAWSON, and STAKELY, JJ., concur.