333 So.2d 796 (1976)
Rubye Carter BERRY
v.
DRUID CITY HOSPITAL BOARD, etc.
SC 1196.
Supreme Court of Alabama.
May 21, 1976.
Rehearing Denied and Interest Allowed July 2, 1976.
*798 Callahan & Nichols, Tuscaloosa, Hogan, Smith & Alspaugh, Birmingham, for appellant.
Roberts & Davidson, Tuscaloosa, for appellee.
SHORES, Justice.
This is a suit against a hospital, protected from tort liability be governmental immunity (granted by statute), charging it with breach of implied contract. A verdict for $45,000 was returned against the hospital. After the verdict was returned, the hospital filed a motion for judgment notwithstanding the verdict and motion for a new trial. In support of these motions, it called to the trial court's attention the case of Hembree v. Hospital Board of Morgan County, 293 Ala. 160, 300 So.2d 823 (1974). Relying upon this case and Smith v. Houston County Hospital Board, 287 Ala. 705, 255 So.2d 328 (1971), the court granted the motion for judgment notwithstanding the verdict.
The plaintiff, Rubye Carter Berry, was taken by ambulance to the hospital after fainting while sitting in her car at Gerald's Garage in Tuscaloosa. She was transferred from the ambulance cot to a treatment table and a nurse was informed that the patient had "blacked out." The plaintiff testified that she was not strapped on the table; and when she raised up to look at her watch, she fainted again. When she regained consciousness, she was in a different room and experienced severe pain from her shoulder and pelvic area. Medical testimony revealed that she had suffered fractures in both areas and that she had a 75% permanent disability to her shoulder. Throughout the trial, witnesses for the hospital denied knowledge of an alleged fall in the emergency room.
The plaintiff submits:
(1) The complaint and facts of the case are within the borders of the rule of Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969);
(2) governmental immunity will not bar an action based upon the rule of Paul;
(3) the holding of Paul has been distinguished and narrowed but not overruled; and, that
(4) the decisions of Hembree v. Hospital Board of Morgan County, supra, and Smith v. Houston County Hospital Board, supra, unduly limited the earlier holdings of Paul and Vines v. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436 (1955).
Perhaps no other area of Alabama law has produced as much confusion in recent times as the governmental hospital cases involving breach of implied contract. A common thread running through the line of cases on this point is difficult, if not impossible, to find. A perusal of these cases and a review of basic contract law will be necessary to determine the state of the law in this area.
A re-examination of basic contract law may be helpful in clearing up the confusion which has resulted perhaps because of careless use of legal terms and definitions in our opinions. Before we reach the question of whether an implied contract has been breached, we should first determine what an implied contract is. There is much discussion in our hospital cases about contracts implied in law or quasi or constructive contracts. The use of these terms is unfortunate and confusing since a contract implied by law or quasi contract is not a contract at all. "A quasi contractual obligation is one that is created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent...." 1 A. Corbin, Corbin on Contracts, § 19, at 46 (1963). The purpose of imposing these contractual obligations is to bring about justice. 1 S. Williston, A Treatise on the Law of Contracts, § 3A (3d ed. 1957). Moreover, these obligations are usually based on unjust enrichment or benefit; the defendant may be required to *799 surrender the benefit he has received or even restore the plaintiff to a former status. Williston, supra, at 15. "... As the law may impose any obligations that justice requires, the only limit in the last analysis to the category of quasi contracts is that the obligation in question more closely resemble those created by contract than those created by tort...." Williston, supra, at 13. The duty of a hospital to use due care in the treatment of its patients is an obligation created by law; and the breach of that duty is a failure to observe a reasonable standard of due care under the circumstances which gives rise to the tort action. There exists a duty implied by law, as opposed to a contract implied by law, to exercise due care, the breach of which gives rise to an action in tort. We again affirm those decisions which refuse to imply a contract in law to impose a duty upon a hospital to use due care in the treatment of its patients. Green v. The Hospital Building Authority of the City of Bessemer, 294 Ala. 467, 318 So.2d 701 (1975); Garig v. East End Memorial Hospital, 279 Ala. 118, 182 So.2d 852 (1966).
It is evident, therefore, that when we speak of implied contracts within the confines of Paul v. Escambia County Hospital Board, supra, we are referring to contracts implied in fact. That is, contracts which arise by virtue of the acts or conduct of the parties rather than by express agreement. Adams v. Republic Steel Corp., 254 Ala. 620, 49 So.2d 214 (1950). The only difference between express contracts and implied contracts is the method of expressing mutual assent. It becomes obvious, therefore, that "... an action based on a contract implied in fact could be maintainable against a city [governmental] hospital." Green, supra, 318 So.2d at 704.
Our line of "hospital cases" really begins with Paul v. Escambia County Hospital Board, supra. In that case, the hospital accepted the plaintiff as a maternity patient and she gave birth to a child unattended. As a result, the child was strangled to death by the umbilical cord. We observed that the complaint "... clearly state[d] that the cause of action sued on is failure of the defendant to perform its [implied] promise to attend the plaintiff in the delivery of her child and to make available to the plaintiff the facilities for childbirth which were available at the defendant hospital, all after having undertaken to do so by accepting the plaintiff as a maternity patient...." (283 Ala. at 492, 218 So.2d at 821). We then noted that the complaint was essentially the same as the one filed in Vines v. Crescent Transit Company, supra. The opinion quoted from Vines:
"`It will be observed that a negligent failure to perform a contract, express or implied * * * is but a breach of contract. But if in performing it, it is alleged that the defendant negligently caused personal injury or property damage to plaintiff, the remedy is in tort, for it is not the breach of a contract express or implied, but the breach of an implied [by law] duty to exercise due care not to injure plaintiff or her property which is the gravamen of the action.'" (283 Ala. at 492, 218 So.2d at 821)
We concluded in Paul, as quoted in Holcomb v. Escambia County Hospital Board, 291 Ala. 114, 123, 278 So.2d 699, 707 (1973):
"`... Had the defendant in this case undertaken to perform the contract by administering to the plaintiff in the delivery of her child and performed its duty in a negligent manner, thereby causing the plaintiff injury, then the plaintiff's cause of action based upon such negligence would have been barred under the doctrine of governmental immunity.'"
From these statements, unfortunately a distinction between misfeasance *800 and nonfeasance was made in some cases to deny a plaintiff an action in contract if any attempt at performance was made by the defendant. Smith v. Houston County Hospital Board, supra. This concept was devised quite early as a line of demarcation between tort and contract, or more accurately, between tort and breach of contract. W. Prosser, Handbook of the Law of Torts, § 92, at 614, and N. 14 (4th ed. 1971). Despite considerable criticism of this approach, Dean Prosser finds the classification serves a valid purpose as have the courts in this country in general. Prosser at 614. Indeed, we have consistently applied the rule in this state to determine whether actions in tort were available to the plaintiff where he clearly had a cause of action for breach of contract. Old Southern Life Insurance Company v. Woodall, 10 ABR 441 (1976), 295 Ala. 235, 326 So.2d 726; C & C Products, Inc. v. Premier Industrial Corporation, 290 Ala. 179, 275 So.2d 124 (1972). In these cases, the misfeasance-nonfeasance dichotomy was used to determine whether the plaintiff had stated a tort claim. That he had a contract action was conceded. The Smith opinion found the antithesis of this rule to be that the dichotomy must be used to determine whether the plaintiff could state a contract claim when he clearly had a tort claim. Thus, in Smith, we turned the rule over to determine the availability of a contract action, exclusively equating nonfeasance with contract and misfeasance with tort. This restriction is unnecessarily limiting and, to that extent, we believe Smith was wrongfully decided. It has long been the rule in this state, and most others, that an action for breach of contract can arise by virtue of misfeasance. In Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 349, 62 So.2d 459 (1952), this court held:
"A complaint for the breach of a contract in not performing the obligation there expressed, or not doing it in the way specified, is not in tort ..." (Emphasis added).
See also the dissenting opinion of Justice Jones in Hembree, supra.
An example in the extreme may be beneficial. Assume that a patient is admitted to a hospital's maternity ward. Assume further that, due to a scheduling error, a doctor was not available when the patient was ready for delivery and an unqualified hospital employee made an effort to deliver the child, which resulted in injury to the patient. If the plaintiff alleges the existence of a contract implied in fact and alleges facts and circumstances sufficient to infer that the hospital impliedly contracted to have a physician available at the crucial time, a good claim is stated.
Thus, the same act may constitute both a breach of contract and a breach of a duty implied by law and thereby give rise to an action ex contractu and ex delicto. The aggrieved party in such a situation has previously faced an election in his pleadings between one or the other of these causes of actions. Under the Alabama Rules of Civil Procedure, Rule 8(e)(2), "A party may ... state as many separate claims ... as he has regardless of consistency ... subject to the obligations set forth in Rule 11." This rule is identical to the Federal Rule on this point, and as noted in the Committee Comments to Rule 1: "It has long been settled in this state that when the legislature adopts a federal statute ... it adopts also the construction which the courts of such jurisdiction have placed on the statute...." Relying on the federal cases on this point, we find no election necessary at the pleading stage in this situation. See, e.g., Justice v. Prudential Insurance Company of America, 351 F.2d 462 (4th Cir. 1965); Israel v. Alexander, 50 F.Supp. 1007 (D.C.N.Y.1942).
Of course, in the instant case, this problem is not before us since the plaintiff made no effort to state a tort claim because it is barred by governmental immunity. The question before us is simply whether the plaintiff has stated a cause of *801 action for breach of implied contract. The plaintiff need state only a claim for relief containing a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief to which he deems himself entitled. ARCP 8(a). Applying this to a breach of contract action, the plaintiff need only allege the existence of a valid and binding contract, performance by the plaintiff and breach by defendant. See 1 C. Lyons, Alabama Practice, § 8.3 (1973).
"In pleading the existence of an express written contract, plaintiff, at his election, may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect. However, in an action on a contract implied... in fact, the allegations must show the facts and circumstances from which the agreement ... can be inferred...." 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1235, at 191-92 (1969).
This is more or less the point that Justices Jones and Faulkner made in their dissent in Holcomb v. Escambia County Hospital Board, supra, interpreting Garig v. East End Memorial Hospital, supra. After finding Garig to be consistent with Paul, the dissenting opinion believed the holding of Garig to be:
"... that where a party seeks redress in contract, express or implied, specific terms of the contract out of which the duty is alleged to arise must be averred, and a general averment that the defendant impliedly contracted to exercise due care will be construed as stating a cause of action ex delicto...." (Emphasis added) (291 Ala. at 123, 278 So.2d at 707)
Thus, a complaint grounded in implied contract must state facts and circumstancesthe acts and conduct of the parties from which the contract alleged can be inferred.
We now turn to the complaint in the instant case. The complaint contains two counts. Count One alleges in part:
"... Plaintiff further alleges that defendants entered into an implied contract with the plaintiff wherein and whereby, for a consideration, the defendants impliedly contracted, undertook, promised or agreed to treat, observe and care for the said plaintiff's condition. Plaintiff further alleges that the said defendants did not perform or fulfill its implied contract properly to treat or care for the said plaintiff or to assist in the treatment of her condition, or to give the plaintiff the required treatment and needed medication; but on the contrary, the defendants in violation of its contract allowed the plaintiff to remain in the emergency room in an unattended condition and that the plaintiff was thereby permitted to fall off the stretcher upon which she had been placed...."
Count Two alleges in part:
"... that the defendants entered into an implied contract with the plaintiff wherein and whereby, for a consideration, the defendants impliedly contracted, undertook, promised or agreed to treat, observe and care for the said plaintiff's sick condition. Plaintiff further alleges that said defendant after having accepted said contract did not fulfill or perform its contract to treat, nurse, observe and care for said plaintiff as impliedly agreed, or to give the plaintiff the service agreed to, but on the contrary, in violation of the terms of said contract, the defendants failed to give the plaintiff assistance, supervision and attention, and left the plaintiff on a stretcher unattended in the emergency room, all in violation of the terms of the implied contract ..."
It is our opinion that this complaint does allege facts sufficient for the jury to find an implied contract and a breach *802 thereof. The complaint allows the inference that the plaintiff was accepted in the emergency room for treatment and that such treatment was not forthcomingthat there was an implied contract, via the defendant's conduct in accepting the plaintiff for treatment, to give her attention while on the stretcher, on the treatment table in the emergency room, and that the breach of this contract caused the plaintiff damage. While the complaint could have been stated in a more concise and specific fashion, it is, in our opinion, sufficient under our rules of procedure.
We feel compelled to state once again that the sufficiency of the complaint is not supplied solely because it is framed in negative language, i.e., failure to do that which was impliedly promised by the acts of the hospital. Hopefully, we have laid the misunderstanding that nonfeasance is a requirement in this area to rest. The judgment of the circuit court is, therefore, reversed and the court is instructed to reinstate the original verdict.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ALMON, J., concurs.
HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX, FAULKNER, JONES, and EMBRY, JJ., concur specially.
BLOODWORTH, Justice (concurring specially.)
I concur in the result reached by the majority in Justice SHORES' opinion.
Here, "count one" of the complaint averred:
"... defendants entered into an implied contract with the plaintiff wherein and whereby, for a consideration, the defendants impliedly contracted, undertook, promised or agreed to treat, observe and care for the said [plaintiff]... that the said defendants did not perform or fulfill its implied contract...."
This count is almost exactly the same, word for word, as "COUNT ONE" of the complaint, in Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969), which reads, in pertinent part, as follows:
"... Plaintiff ... entered into an implied contract with the Defendant wherein and whereby, for valuable consideration, Defendant impliedly contracted, undertook, promised and agreed to nurse and care for the said Plaintiff ... that said Defendant did not perform or fulfill its contract...."
In Paul we held that the plaintiff "has a remedy for breach of contract for failure of the defendant to perform."
This is exactly the situation in the case before us and on the authority of Paul, I concur to reverse and remand the judgment of the trial court.
It is my judgment that this is all we need to say and all we need to hold.
MERRILL, MADDOX and FAULKNER, JJ., concur.
JONES, Justice (concurring specially).
I concur specially in order to underscore what I believe is a most significant decision of this Court. The commendable effort of Justice Shores, in the draftsmanship of this opinion, should serve as a vehicle to bring order out of chaos in this confused area of the law.
On the one hand, I agree with Justice Bloodworth that Paul is ample authority for reversal because of the striking analogy of the two cases. On the other hand, the enigma created by the subsequent case law, especially Smith and Hembree, deserves, even cries out for, a more complete and comprehensive restatement of the law governing these cases.
*803 I feel that one point in particular is worthy of reemphasis: The integrity of the law of contracts and the doctrine of election of remedies, as those principles evolved through over 100 years of case law development, have been preserved and applied (and hopefully clarified) by this opinion. I reemphasize this point in order to reply to those who erroneously (in my opinion, that is) believe that the effect of Paul was to create some new exception in the law of contracts to accommodate the harshness of the governmental immunity defense applicable to public or quasi-public hospitals.
In other words, there seems to have been a common reaction of bench and bar to Paul which may be summarized like this: The Alabama Supreme Court, while adhering to governmental immunity, recognized its harshness when applied to public hospitals and, in order to allow recovery for personal injury resulting from the violation of duties arising out of the hospitalpatient relationship, created an exception to the general law of contracts and allowed a suit for breach of the implied terms of the agreement of the parties to which the governmental immunity defense is inapplicable. Indeed, the very Court that sired Paul was not immune to this same reaction which formed the premise of the error manifested in Smithplacing the test of the remedy (whether tort or contract) in the method of the breach as opposed to the source of the duty. No great imagination is needed to "hear" Smith saying, "The `exception' allowed in Paul was probably a mistake in the first place; at any rate, we will not extend its application beyond the narrow factual context in which it found its expression."
Let's put Paul in proper perspective. If Paul had not allowed recovery on the theory of implied contract, not only would it have overruled existing case law (as culminated in Vines), it would have created an exception theretofore unknown to the law of contractsthe public hospital exception, if you please. Stated otherwise, Paul avoided, rather than created, an exception.
The law of contracts governs the implied terms of many varied relationships of many varied parties. A few examples of other implied obligations may be helpful: In the absence of an express agreement, the terms of the assent between the doctor and his patient, the automobile owner and the garageman, the garment owner and the drycleaning establishment (and the list could go on and on) are governed by the law of implied contracts. To be sure, the law imposes (or may impose), arising out of such relationships, a legal duty, the breach of which gives rise to an action ex delicto; but the election of remedies doctrine gives the claimant his option to proceed either in tort or contract where the duties are dually imposed. It follows, then, that to hold a hospital not liable in contract for the breach of a duty contractually imposed is to carve out of the law of contracts an exception to general contract law. Mr. Justice Simpson, in writing for the Court in Paul, simply declined to make an exception for one particular class of defendants; rather, he applied the same law to public hospitals as to anyone else where the claimant alleges injury and damages resulting from the breach of implied terms and conditions arising from the mutual assent of the parties.
Another common fallacy that seems to have crept into the legal thinking of these cases is that there is some significant distinction between express and implied contracts. It should be remembered that the only distinction between these two types of contracts lies in the quality and quantity of proof of their consummation and terms. It is the method of expressing assent that marks the only distinction between express and implied contracts. Ordinarily, an express contract is more susceptible to proof, both as to its consummation and terms; but the legal incidents of the law of contracts are no less operative as to implied contracts subject, of course, to allegations and proof of the specific terms of the agreement assented to by the parties, as that proof may be aided by the relationship of the parties.
*804 One concluding observation: Where the governmental immunity provision is not contained in the legislative act creating these public hospitals, there will, of course, be fewer occasions for electing the contract remedy. (Other considerations, however, such as statutes of limitation, the defense of contributory negligence, and measure of proof may still influence this choice.) But some Hospital Board Acts still contain a governmental immunity provision, and in these cases the claimant is never afforded the luxury of election. He must sue in contract. In other words, the governmental immunity cases (Jackson [v. City of Florence, 294 Ala. 592, 320 So.2d 68] and Lorence) may have reduced, but they did not eliminate, actions sounding in contract against public hospitals.[1]
I caution the reader, bench and bar, that what I am about to say now is a purely personal observation and reflects only my best efforts to understand what I believe the majority is saying in this type of case. If I were a circuit judge with a motion to dismiss or a motion for summary judgment where the complaint purported to sound in contract against a public hospital, I would grant the motion unless I could answer affirmatively each question in the following check list:
1. Does the complaint clearly aver that the hospital-patient relationship existed between the party alleged to have suffered injury and the hospital?
2. Are the terms of the alleged agreement specified?
3. Do the terms and conditions of the contract, as specified, come within the contemplation of the parties; that is, does the agreement fall within the reasonable contemplation of the parties when tested by a hospital-patient relationship?
4. Are the terms alleged to have been breached medically (that is, hospital treatment) oriented? In other words, do the specified terms of the agreement relate to the purpose for which the patient was admitted to the hospital? In answering this question, keep in mind that this Court has held that sexual assault[2] and carelessly and unintentionally permitting a door to close on a patient's finger[3] fell outside the ambit of the implied agreement as contemplated by the parties. Admittedly, not every fact situation will pose a purely legal question for the trial judge. In any given case, the pleadings and the proof as to the existence vel non of an implied contract may present a jury question.
The foregoing list will not answer every question that may arise, but it should serve as a premise to test the averments of a complaint, not from a technical pleading point of view, rather from a perspective of evaluating whether the pleading states a legal claim on which relief can be granted.
EMBRY, Justice (concurring specially):
I concur in the opinion of Justice Shores except I vigorously disagree with what is said in Justice Shores' opinion about quasi, constructive, or contracts implied in law. To say that the law refuses to imply a contract in law (quasi or constructive contract) which imposes a contractual duty upon a hospital to use due care in the treatment of its patients is simply erroneous. My views on this subject are expressed in my dissents in Green v. Hospital Building Authority of City of Bessemer, 294 Ala. 467, 318 So.2d 701, and Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631.
*805 Under such implied contracts the hospital does have a duty to use due care.
"* * * This is a duty implied apart from the express contract between patient and hospital, or from one implied in fact based on the conduct of the parties (actual or tacit consent). * * *" Green, supra.
The failure of the majority to recognize a contract implied in law which imposes a duty of due care upon the hospital clearly suggests that such decision was made without consideration of certain legal duties which, though not based on consent, are of a contractual nature; a fortiorari, the presence of such duties, contractual in nature, demands availability of remedies adequate to compensate the injured party for breach thereof.
HEFLIN, C. J., concurs.

ON REHEARING
SHORES, Justice.
The appellee has filed an application for rehearing, which the court has carefully considered. It is overruled.
The appellant has filed a motion to allow interest from the date of the jury verdict under Rule 37, ARAP. The appellee contests this motion.
Rule 37, ARAP, provides:

"INTERESTS ON JUDGMENTS
"Unless otherwise provided by law, if a judgment for money is a civil case is affirmed or the appeal is dismissed, whatever interest is provided by law shall be payable from the date the judgment was entered in the trial court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the trial court, the certificate of judgment shall contain instructions with respect to allowance of interest."
In the instant case, the trial court granted the defendant's motion for a judgment notwithstanding the jury verdict in favor of the plaintiff. The plaintiff appealed, and the cause was reversed and the trial court was instructed to reinstate the jury verdict.
Title 9, § 63, Code of Alabama 1940, provides:
"Judgments and decrees for the payment of money, other than costs, bear interest from the day of rendition."
The question is whether the plaintiff is entitled to interest from the date of the jury verdict. We hold that she is. Several jurisdictions have so held, reasoning that when the delay in entering judgment on the verdict was occasioned by the party against whom it was rendered, the successful party, on appeal, is entitled to interest from the date of the verdict. See Annot., 1 A.L.R.2d 479 (1948). In Hewitt v. General Tire and Rubber Company, 5 Utah 2d 379, 302 P.2d 712, 713 (1956), the Supreme Court of Utah, having previously reversed a judgment setting aside a jury verdict in the same case (3 Utah 2d 354, 284 P.2d 471), said:
"... The court's order entering judgment for the defendant was in error and abortive, and when this court issued its mandate ordering the judgment for defendant vacated and the judgment on the verdict for plaintiff reinstated, it vitalized that judgment to the same extent and with the same force as though the trial court had never entered the abortive and erroneous judgment for defendant."
We can see no good reason why the plaintiff should not be allowed interest from the date of the jury verdict. When a defendant appeals from a judgment entered in favor of the plaintiff, and the same is affirmed, the judgment bears interest from the date of rendition. Why should the rule be different when the trial court, on motion of the defendant, sets aside a *806 verdict in favor of the plaintiff, who is then compelled to appeal, if he is successful in having the original verdict reinstated?
The appellant's motion to allow interest from the date of the jury verdict is hereby granted.
OPINION EXTENDED.
MOTION TO ALLOW INTEREST GRANTED.
APPLICATION FOR REHEARING OVERRULED.
All the Justices concur.
NOTES
[1] This comment is not to be understood as expressing any opinion on the constitutionality of these immunity provisions in view of the disparity among the various acts.
[2] Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975).
[3] Green v. Hospital Building Auth. of City of Bessemer, 294 Ala. 467, 318 So.2d 701 (1975). See also Hall v. City of Huntsville, 291 Ala. 124, 278 So.2d 708 (1973).