This appeal involves a suit for personal injuries received by Edgar Welborn (Welborn) while helping David R. Snider (Snider) carry a pole in Snider's back yard. The trial court granted directed verdicts for Snider on Welborn's counts sounding in implied contract and failure to provide a safe place of employment, and entered judgment on the jury verdict for Snider on Welborn's negligence count. Welborn appeals from these rulings and also from a ruling limiting his examination of prospective jurors regarding possible bias.
At the time of the accident, Welborn was retired but worked for Snider's neighbor Walter Boyd doing odd jobs around Boyd's house and yard. On the day Welborn was hurt, Snider and his son Ollie were building a shed in their back yard. Welborn walked over to visit with them while they took a break from their work about 2:30 in the afternoon. When the Sniders returned to their work, Welborn accompanied them. The Sniders had one more post to raise for their shed; the three men picked it up, with Welborn at the front, Snider in the middle, and Ollie at the rear.
Ollie slipped and dropped the pole, causing Snider to lose control and drop it also. The pole fell on Welborn, fracturing several of his ribs and rendering him unconscious. He was taken to the hospital, where he was treated and released about two weeks later.
The first count of the complaint alleged that Welborn was on Snider's premises as an invitee and Snider negligently allowed or caused the pole to fall on Welborn. The second count alleged that Welborn was engaged in the work of helping Snider install the pole and the pole fell on him as a proximate consequence of Snider's failure to provide him with a safe place to work. Count three was Francis Welborn's claim for loss of consortium. The complaint was amended to add count four, alleging that Snider entered into an implied contract with Welborn whereby for the consideration of Welborn's assistance in raising the post, Snider impliedly promised to support the rear of the post.
The case came on for trial on March 30, 1981. The court in voir dire of the jury panel inquired whether any of the prospective jurors were policyholders of Alabama Farm Bureau Mutual Casualty Insurance Company. Snider had insurance coverage with Farm Bureau. Welborn's attorney followed that question with one asking a policyholder if he could fairly and impartially decide the case without favoring his insurance company. The court granted Snider's motion for a mistrial and stated that Welborn had violated a local court rule forbidding attorneys from asking any questions concerning insurance without first submitting the question to the court.
Welborn then filed a motion for a pre-trial hearing on April 3, 1981, stating that at the next trial he would want to ask the same question. The motion requested the attorney for Snider to produce the local court rule relied on by the trial court in granting the mistrial. The motion then requested the court to enter a pre-trial order,
 "stating whether or not the plaintiff will be allowed to ask the question which was approved by the Supreme Court in American Pamcor, Inc. v. Evans, 288 Ala. 416, 261 So.2d 739 as follows:
 `Mr. or Mrs. (whoever the prospective juror may be) you said, I believe, that you are a policyholder with Farm Bureau Insurance Company.
 `I will ask you if that being true, do you feel like you could fairly and impartially decide this case based strictly on the law and the evidence, or do you feel like you may be a little bit favorable to the insurance company that has your coverage?' *Page 1200 
The motion requested that, if the court would not allow Welborn to ask the stated question, to specify its reasons and to rule whether or not the court would itself ask the question.
The court held the pre-trial hearing on April 7. It was established that the local court rule mentioned at voir dire predated the Alabama Rules of Civil Procedure and was no longer in effect because it had not been adopted in accordance with Rule 83, A.R.Civ.P. Nevertheless, the court ruled that allowing Welborn to ask policyholders whether they would favor their insurance company would improperly inject insurance into the case. The court stated that it would ask the entire jury panel whether they would be impartial and go by the evidence and whether they had ever been employed by any insurance company as an adjuster or agent.
Welborn filed a petition for mandamus to challenge the court's rulings at the pre-trial conference. This Court denied the petition on May 26, 1981, without published opinion. Ex parteWelborn, 402 So.2d 977 (Ala. 1981).
When the case came on for trial again, ten members of the jury panel identified themselves as policyholders of Farm Bureau. Welborn challenged all ten for cause, and the trial court granted the challenges.
At the close of the evidence the court granted Snider's motion for directed verdict on the count alleging failure to provide a safe place of employment and on the implied contract count. The jury returned a verdict for Snider on the negligence count and the court entered judgment on the verdict. Welborn appealed to this Court.
The trial court properly granted the directed verdicts. Welborn argues the duty to provide a safe place of employment without first establishing that he was employed by Snider. "For one to be an employee, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or in other words, not only what shall be done, but how it shall be done." Solmica of the GulfCoast, Inc. v. Braggs, 285 Ala. 396, 398, 232 So.2d 638 (1970);McCants v. State, 282 Ala. 397, 211 So.2d 877 (1968). Snider had no right to control Welborn's assistance, and certainly did not offer to pay him for it. Welborn himself, in answer to the question, "Were you employed by him [Snider]?" answered "No, sir."
Neither is there any evidence in the record indicating that the parties intended to become contractually bound. Welborn was simply a friend who volunteered his assistance to Snider. There were no negotiations which led to Welborn's assistance, no request by Snider for the assistance, and no directions by Snider concerning Welborn's location on the pole. The men were simply raising a pole with no thought of a contract and with no conversation or conduct which led to the formation of a contract.
There was thus no evidence of any agreement between Welborn and Snider. A contract implied in fact requires the same elements as an express contract, and differs only in "the method of expressing mutual assent." Berry v. Druid City Hospital Board,333 So.2d 796, 799 (Ala. 1976). Implied contracts normally arise in situations where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement. In Berry, supra, the court held the complaint sufficiently alleged an implied contract whereby the hospital agreed to "treat, observe, and care for" the plaintiff. In Vinesv. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436 (1955), plaintiff alleged that the bus company impliedly contracted to safely transport her to the regular and customary stopping place of its buses. These and other similar cases are distinguishable from the case at bar in that some commercial transaction pursuant to a contractual relationship was evidently the intent of the parties; here, nothing of the sort could fairly be inferred from the actions of the parties.
Welborn argues that the trial court infringed on his right to qualify the jury as fair and impartial by refusing to allow him to question them on favoritism toward their insurance carrier. *Page 1201 
The presence of insurance coverage is not ordinarily permitted to be injected into the trial of the case. Barnes v.Tarver, 360 So.2d 953, 956 (Ala. 1978); Eathorne v. State FarmMutual Auto. Ins. Co., 404 So.2d 682 (Ala. 1981); Sars, Inc. v.Nichols, 275 Ala. 17, 151 So.2d 739 (1963). It is also true that, while wide latitude should be accorded the parties in their voir dire examination of prospective jurors touching their qualifications, interest or bias, the extent of the examination is largely discretionary with the trial court.Calloway v. Lemley, 382 So.2d 540 (Ala. 1980); Finley v. State,292 Ala. 424, 295 So.2d 428 (1974); Thompson v. Havard,285 Ala. 718, 235 So.2d 853 (1970).
The court's discretion is not unbounded, however. Rule 47 (a), A.R.Civ.P., states: "Examination of jurors. The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination as may be proper." The committee comments state that the rule "preserves the practice under the statute it supersedes, Code 1940, Tit. 30, § 52,[1] by which the parties have a right to put supplementary questions if the court has conducted the initial examination."
The legislature has provided that
 "It is good ground for challenge of a juror by either party:
. . . . .
 "(12) That the juror, in any civil case, is an officer, employee or stockholder of or, in case of a mutual company, is the holder of a policy of insurance with an insurance company indemnifying any party to the case against liability in whole or in part or holding a subrogation claim to any portion of the proceeds of the claim sued on or being otherwise financially interested in the result of the case."
Code 1975, § 12-16-150 (emphasis added).
This Court has held that, although the above code section gives a party a challenge for cause against a juror with a financial interest in an insurance company with which a party has a policy, the party who wishes to exercise the challenge does not have to do so blindly, nor does he have to challenge for cause all such prospective jurors. Hudson v. Stripling,261 Ala. 196, 73 So.2d 514 (1954).
Therefore, it stands to reason that, in order to intelligently exercise his challenge, a party is entitled to more than just the information that a prospective juror has a policy with a mutual company involved in the case. The question Welborn wished to ask was properly allowed in American Pamcor,Inc. v. Evans, 288 Ala. 416, 261 So.2d 739 (1972). Similar questions were allowed in Hudson v. Stripling, supra, and inSars, Inc. v. Nichols, supra. The judgment in Sars was reversed only because of repeated efforts by the plaintiff to inject insurance, not because the court asked a juror if he could fairly decide the case in spite of his connection to the insurance carrier.
We hold that the trial court erred in disallowing any questions beyond the mere fact that jurors were policyholders with Snider's insurance carrier. Because this error adversely affected Welborn's right to trial by a competent, impartial jury, we must reverse and remand for a new trial.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] "Examination of jurors. — In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict." *Page 1202