Lloyd Bush, owner of Lloyd Bush Associates ("Bush"), sued the City of Mobile ("City"), Goldman Sachs Co. ("Goldman Sachs"), William B. Blount, Inc. ("Blount"), and the Frazer Lanier Company ("Frazer Lanier"), alleging that the defendants appropriated his work product and that the work product was a trade secret.
Bush specializes in governmental-related financing transactions, and, by the use of computers, he developed a scheme he contends *Page 874 
was unique and the subject of a trade secret. He was initially contacted by an underwriting firm, Porter, White and Yardley ("Porter-White"), of Birmingham, and asked to become a part of a team restructuring the bond debt of the City. Bush contends that Porter-White was acting as an agent of the City and that he, Bush, was in fact indirectly employed by the City. The City contends that the transaction was a competitive bid; Bush claims that he had no knowledge of any competitive bidding aspect of the deal. Appellees argue that Porter-White was recruiting a team to submit a bid to the City in competition with other bidders, including Goldman Sachs. In any event, the facts show that Porter-White did assemble a team consisting of other underwriters, consultants, and bond counsel, and that this team included Bush.
Bush specializes in the use of advanced computer models in the restructuring of governmental bond debt through refunding, which involves the payment of bonds outstanding and the issuance of new bonds at a lower interest rate. The process was desirable at the time these plans were contemplated (1985), because of a substantial decline in interest rates. Refunding, however, is complicated by several restrictions instituted by the Internal Revenue Service that tend to minimize the benefits of such an exchange. Bush's computer-generated model coordinated offerings and buybacks to maximize the tax savings of a refunding arrangement. The Porter-White team submitted a plan to the City that included Bush's model. Bush considered that his model was confidential and was his own work product, but he expressed his understanding of its confidentiality only to Porter-White; he had no direct contact with the City.
The City accepted the plan proposed by Goldman Sachs and the other defendants. Although the City had rejected the Porter-White plan, Bush contends that his part of that plan (the computer model) was appropriated and used by Goldman Sachs and the City in the actual refunding. In his suit, Bush alleged that the City breached an implied contract with him, and that the City and Goldman Sachs improperly appropriated his trade secret. The trial judge granted the defendants' motion for summary judgment.
The proper standard for reviewing a summary judgment is to determine whether there exist any genuine issues of material fact. Purvis v. PPG Industries, Inc., 502 So.2d 714, 716 (Ala. 1987); Shoen v. Gulledge, 481 So.2d 1094, 1095 (Ala. 1985);Turner v. Systems Fuel, Inc., 475 So.2d 539, 541-42 (Ala. 1985).
In determining whether Bush has a viable claim, we must answer these questions:
 (1) Did Bush have a contract, express or implied, with the City?
 (2) Was the computer model he submitted with a proposal made to the City a trade secret?
Bush's contract claim is based on his claim that an agency relationship existed between the City and Porter-White so as to bind the City by the actions of Porter-White in employing Bush. The only evidence of the relationship between the City and Porter-White is a letter of September 11, 1985, from Porter-White to the City that set out the terms of the re-funding proposal. The letter specifically reserved approval of the arrangement to future action by the City, stating that "approval is subject to formal action by the City at a future meeting" and that the contract was contingent "upon final approval of the plan of financing by the City." No agency relationship could be based solely on such equivocal language.
Bush also asserts that an implied contract existed between himself and the City. "A contract implied in fact requires the same elements as an express contract, and differs only in 'the method of expressing mutual assent,' Berry v. Druid CityHospital Board, 333 So.2d 796, 799 (Ala. 1976)." Welborn v.Snider, 431 So.2d 1198 (Ala. 1983). A perusal of the facts in this case leads this Court to the conclusion that there was no mutual assent to employ Bush. Bush admits that he had no contact with the City; he dealt exclusively with Porter-White, and, therefore, if no agency relationship existed between Porter-White *Page 875 
and the City, then the City cannot be bound.
Bush's other allegations rest upon the trade secrets doctrine. That doctrine's secrecy requirement, as outlined inDrill Parts Service Co. v. Joy Manufacturing Co.,439 So.2d 43 (Ala. 1983), is as follows: "Absolute secrecy is not required; a substantial element of secrecy is all that is necessary to provide trade secret protection." 439 So.2d at 49. Therefore, we must determine whether a substantial element of secrecy was present in Bush's transfer of his computer model.
The computer model, as transferred, contained no markings evidencing secrecy, and Bush himself expressed the confidential nature of the product only to Porter-White. There is no evidence that Porter-White relayed this knowledge to the City. Once again, the absence of an agency relationship between the City and Porter-White renders any communications between Bush and Porter-White ineffective in binding the City.
Bush also brings a claim against the defendant underwriters, charging that by appropriating his work product the underwriters interfered with his actual or prospective business relations with the City. There was no direct business relation between the City and Bush that could be interfered with; therefore, this claim is baseless.
Bush has failed to present any issue of material fact to support his claim, and summary judgment was properly entered in favor of the defendants.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.